THOMAS RICHESON *et al.*, Respondents, *v.* SAMUEL SIMMONS, Appellant.

1. *Husband and wife — Legislative divorce supposed to be invalid — Power of wife to dispose of her separate property.*— By an act of the Missouri Legislature, a husband and wife were declared divorced, and for a period of twenty years afterward lived apart and ceased to intermeddle with the affairs of each other. Both married again and brought up children born of such marriages, built up separate and distinct property, and transacted their business without regard to any previous connection between them. *Held,* that under such circumstances, even admitting the divorce to be illegal, the law did not require the wife, after her second marriage, when she wished to dispose of her separate property, to prevail on her former husband to join in the conveyance, while he professed at the same time to be the husband of another woman. The length of time which elapsed after the divorce, and the manner in which each party regarded and treated the other, operated as an estoppel, and precluded them from interfering with the affairs of one another.

*Appeal from St. Louis Circuit Court.*

*T. T. Gantt,* for appellant.

I. The contract of October, 1845, settles no property on Mary Melinda except that which is therein conveyed to trustees for her use.

II. As to after-acquired property, it merely contains a covenant that Britton A. Hill will renounce all rights thereto accruing to him by reason of the marriage.

III. The marriage between Britton A. Hill and Mary Melinda does not appear to have been legally dissolved, and for all legal purposes she must be regarded as still bound by that marriage.

IV. The deed of E. H. Shepard, of June 29, 1865, conveys to Mary Melinda the complete title (legal and equitable) to the land in controversy.

V. The fact that her right to the enjoyment of this property, undisturbed by Britton A. Hill, is secured by his ante-nuptial covenant, does not diminish her estate in the land, nor cause the legal estate to vest in any other person than herself.

VI. The deed tendered by the plaintiffs to the defendant is invalid. It can have no operation as the execution of a power to appoint the use of the land, because the three essential conditions of such operation are wanting, there being no feoffee to uses, no power to appoint the use; and the use itself, as distinguished from the legal estate, having no existence. (1 Cruise's Dig. 376, ch. 111, § 5; 1 Sugd. Pow. 1, 2, § 3; id. 9, § 4; Sto. Eq. Jur., §§ 1388–92.) It can not operate as a conveyance at law under our statutes, for the formalities prescribed by these statutes have not been observed. (Gen. Stat. 1865, ch. 109, § 2; Chauvin v. Wagner, 18 Mo. 531.) Counsel reviewed the cases of Whitesides v. Cannon, 23 Mo. 457; Coats et al. v. Robinson, 10 Mo. 757; Logan v. Logan, 19 Mo. 465; Norcum v. D'Oench et al., 17 Mo. 118, and argued that they were not in point.

VII. The defendant is entitled to a complete legal and equitable title, free from all reasonable doubt. A title merely equitable, which a court of equity would compel the heirs of Mrs. Barclay to respect, and, perhaps, to perfect, is not what we are asking for. We demand a title complete in itself. But the paper tendered is not effectual for any purpose.

*Glover & Shepley*, and *Sharp & Broadhead*, for respondents.

I. The question of the validity of Mrs. Hill's divorce from Mr. Hill is immaterial.

II. Conceding that Mr. Hill was to-day the undivorced husband of Mrs. Barclay, he has no right or power over the property in

question. (Dubois v. Hale, 2 Vern. 614; Newsom v. Boyer, 3 P. W. 37; De Gaillon v. Harel, 1 B. & P. 357; Gregory v. Paul, 15 Mass. 31; Rose v. Bates, 13 Mo. 30.)

III. Mrs. Barclay's power to convey is secured to her expressly in the marriage articles of October 7, 1845.

IV. The property in question being secured in absolute right and ownership to Mrs. Barclay, her power over it results as an incident from such ownership. (Whitesides v. Cannon, 23 Mo. 457; Dyett v. N. A. Coal Co., 20 Wend. 57; Jacques v. M. E. Church, 17 Johns. 548; Bell *et al.* v. Kellar, 13 B. Monr. 381; Coates *et al.* v. Robinson, 10 Mo. 757; Logan v. Phillips, 18 Mo. 23; Logan v. Logan, 19 Mo. 465; Lyler v. Lyler, 1 Harp., ch. 288.)

V. The abandonment of Mrs. Hill by her husband, in 1845, entitled her to acquire property as a *femme sole*, so far as he is concerned, and dispose of it as a *femme sole*.

VI. The marriage articles of June 12, 1854, between Mr. Barclay and Mrs. Hill do not affect the title of the property in dispute, because all the parties therein conveyed to Simmons.

VII. The conveyance by Mrs. Hill, now Mrs. Barclay, by any deed in her lifetime, or any testamentary conveyance, whether a will or in nature of a will, is competent to pass the whole estate in the property in suit.

WAGNER, Judge, delivered the opinion of the court.

This was a suit for specific performance, and the questions presented are involved in some difficulty. From the papers in the case it appears that on the 7th day of October, 1845, Britton A. Hill and Mary Melinda Shepard, then a minor, by her guardian, Elihu H. Shepard, entered into a marriage contract, by which it was agreed that he, the said Britton, should not, in any event, take, claim, or intermeddle with any of the property of which the said Mary was seized or possessed, or of which she might thereafter be seized or possessed, by inheritance, devise, donation, purchase, or otherwise, nor with the profit, income, or interest thereof.

Holmes and Kayser were made trustees, and the property conveyed to them to execute the uses.   Hill conveyed certain real estate in New York to the trustees, the rents, issues, and profits of which were to be collected and paid over for the use and benefit of the said Melinda during her lifetime ; and the deed then contains this further clause : "And the said Mary Melinda Shepard, with the consent of her said guardian, and of said Britton, doth, in consideration of the premises, grant, assign, and set over unto said Kayser and Holmes, as trustees as aforesaid, all her said real estate above described, to have and to hold the same with all the appurtenances, to the said Holmes and Kayser, and the survivor of them, and the executor and administrator of each survivor, for and during the whole term of the joint lives of said Britton and Melinda, and for and during the life of said Britton, if he shall survive said Melinda, upon trust, however, for the following purposes : that they, the said trustees, shall hold, take, manage, superintend, preserve, and keep the whole of said real estate and appurtenances, and receive the rents, issues, and profits thereof, in trust for said Mary Melinda and her heirs of her body, so that no part of said estate shall be subject to any of the debts or liabilities of said Hill in any manner."

It is further provided that the trustees, or the survivor of them, or the heirs or executors or administrators of the survivors of them, shall, upon the written request of said Melinda and said Britton, convey the real estate or personal property as they direct ; and the said Britton and Melinda are authorized to appoint new trustees, by directing Kayser and Holmes, or the survivor of them, to do so in writing.   Further power is given the said Melinda, in law, to devise all or any part of her said real estate and personal property by her last will and testament, or by any other writing whatever, signed with her hand, in the presence of two or more credible witnesses.

Upon the execution of this contract the marriage was solemnized between the parties, and of the marriage there was born a son, now living.

By an act of the General Assembly of the State of Missouri, approved March 2, 1849, the bonds of matrimony contracted

between Britton A. Hill and Mary Melinda, his wife, were declared dissolved, and they were forever divorced from each other, and by the act they were restored to all the rights and privileges pertaining to unmarried persons, as though the marriage had never been consummated. Subsequent to this legislative divorce, and in 1854, Mary Melinda Hill intermarried with D. R. Barclay, and in 1857 Britton A. Hill was married to Miss Joanna Behrens. Of both these marriages there were issues, which are still surviving. Britton A. Hill and Mrs. Barclay are alive and still continue to reside in St. Louis.

Prior to the marriage of Mrs. Hill and Barclay, they made and executed a marriage contract, which is similar in all essential particulars to the one entered into between Hill and Mary Melinda. The trustees appointed were Richeson and Davis, and the latter becoming disqualified, Papin was appointed in his place; and they, with Barclay and wife, are now the plaintiffs in this suit.

On the 15th day of February, 1864, Elihu H. Shepard made a lease of a certain lot in the city of St. Louis, for the term of fifty years, to Simmons, the defendant herein, on certain conditions, and on the additional condition that if, at any time during the continuance of the lease, the lessor or his legal representatives should determine to sell the leased premises, he or they should first submit to the lessee the best terms as to price or payment upon which the same would be sold, and the said lessee should have the refusal of said property at the terms proposed for the space of thirty days.

On the 29th day of June, 1865, Elihu H. Shepard conveyed the lot to Mary Melinda Barclay, wife of D. R. Barclay. On the 18th of March, 1869, a notice was given to the defendant, signed by Barclay and wife and the trustees, stating that they had concluded to sell the lot, and fixing the price and terms of sale. The defendant duly accepted the proposition in writing and acceded to the terms and price. Accordingly, a deed was regularly made, conveying the premises to the defendant, signed and acknowledged by Richeson and Papin, as trustees, and by Barclay and wife. The defendant refused to accept the deed, and this suit was commenced to compel a specific performance of the contract.

In his answer the defendant stated that he was advised and informed by counsel that divorces by act of the Legislature of Missouri were invalid, ineffectual, and nugatory, and that the Legislature had no power or authority to declare two persons who had been lawfully married to be divorced, and that the said act was wholly inoperative and void; and the defendant further alleged that it appeared from the petition that the said real estate was given to the said Mary Melinda by Elihu H. Shepard, by deed dated June 29, 1865, and that the only mode by which property thus given to and held by a married woman could be conveyed was by a conveyance executed by her husband and herself, and that the concurrence of the said Britton A. Hill was necessary to validate and render effectual any disposition the said Mary Melinda might wish to make of said real estate. In consequence of which it was averred that the said deed was not sufficient to convey the title to the real estate. Among other facts, the court, in its decree, found that since the second of March, 1849, and up to the commencement of this suit, the said Britton A. Hill has treated his former wife as a *femme sole ;* that he had not interfered with or claimed to have any control over her property, or any interest therein, nor had he treated her as his wife, but, on the contrary, had during that period intermarried with another woman, by whom he had issue; and the court further found from the evidence that Hill had no interest in or control over any property the said Mary Melinda had acquired since her marriage; that the deed tendered to the defendant was a good and sufficient conveyance to pass the fee-simple title to the lot in question, and accordingly the decree was entered up for the plaintiffs, granting the relief prayed for.

It is insisted by the respondent that, under the statute, the present Mrs. Barclay, formerly Mrs. Hill, could only convey her real estate by an instrument in conjunction with her husband, and that, as the legislative divorce was unconstitutional, and therefore a nullity, Mr. Hill is still her husband and his concurrence is indispensably necessary.

We do not consider that the settlement of 1845, whereby Mary Melinda, then a minor, conveyed her estate to Holmes and Kay-

ser, as trustees, has any particular bearing upon this case. The contract makes no provision whatever, and seeks to make none, for the manner in which any property not at that time owned and held by her should be sold and disposed of. Again, she being a minor at that time, a doubt may be suggested whether her subsequent deed was not a disaffirmance of this particular contract; nor is there any provision in the deed of 1854 in relation to the after-acquired property.

Although the instrument conveying property to a married woman points out a particular mode by which she may dispose of it, still she will not be confined to that mode, and it will not be held exclusive unless restraining or negative words are used. (Kimm v. Weippert, 46 Mo. 532.) It is needless and unnecessary to go into any discussion of the refinements which have sprung out of the doctrine of powers, for, after all, the main and important question in the case is, whether the non-concurrence of Britton A. Hill in the deed rendered it invalid.

That the legislative divorce was unconstitutional, is not disputed. It was so decided as early as 1835, in the case of The State v. Fry *et al.*, 4 Mo. 120.) But, as an historical fact, we know, by an examination of the session acts, that the practice of granting legislative divorces was kept up and obtained for many years, and, indeed, until a comparatively recent period. In many States these divorces have been held constitutional; and perhaps it is not inappropriate to say that great differences in reference to the question have always prevailed in the minds of the profession. The divorce was no doubt supposed to be valid by Mr. Hill at the time it was obtained, and he is a lawyer of eminent professional ability. Be that, however, as it may, the course of judicial decision in this State has settled the law in opposition to such divorces. But, granting that the divorce at the time was illegal, does it follow that Mr. Hill is entitled to any marital rights, or that Mrs. Barclay is incapable of acting without his consent or concurrence?

By the common law the wife was incapable of acting or entering into contracts without the consent of the husband. Whilst covert she labored under a complete and total disability; but cer-

tain exceptions were made on grounds of necessity and humanity. Thus, where the husband abjured the realm, or was banished, or had left the jurisdiction of the country for an indefinite time, the wife was allowed to act as a *femme sole* — to make contracts, sue and be sued, and also devise or bequeath her property by last will and testament. But I am persuaded that there is little analogy between those cases and this, and no aid can be derived from them. After the divorce the parties continued in the same jurisdiction; they have resided in the city of St. Louis ever since, and now reside in it. There is nothing, therefore, which brings this case within the reasons of the authorities.

From all the investigation that I have given to the case, it is of first impression, so far as the question presented is concerned. Now the record shows that since 1849, a period of twenty years, Mr. Hill and Mrs. Barclay have not only lived separate and apart, but they have ceased to intermeddle with the affairs of each other. With mutual concurrence they have both changed their situation in life; each has married and brought up children, built up separate and distinct property, and transacted their business without regard to any previous connection between them.

It may be reasonably inferred that there is not any very amicable feeling of relationship existing between them. Under such circumstances does the law demand or require the absurdity of Mrs. Barclay, when she wishes to dispose of her private property, going to Mr. Hill and asking him to join in the conveyance, when at the same time he professes to be the husband of another woman? The length of time that has elapsed, the manner in which each party has regarded and treated the other, ought to operate as an effectual estoppel, and preclude either party from an attempt to intermeddle in the affairs of the other.

For upward of twenty years Mr. Hill, so far as his relationship toward Mrs. Barclay extends, has treated her as a *femme sole*; and upon no principle of justice has he any interest in, or can he interfere or exert any control over, her property. Mr. Hill is not here claiming any right, but it is set up in defense that the deed is not valid unless he joins and concurs.

But I am not of this opinion. I think that as Mr. Hill has voluntarily renounced his marital rights, and, by a course of policy persisted in for more than twenty years, has led Mrs. Barclay and the whole world to believe that all control or interest on his part had ceased and been surrendered, he can no longer be a party, nor need he be consulted in any disposition she may see proper to make of her property. Any other conclusion would be promotive of injustice and lead to the greatest hardship.

If these views be correct, this deed tendered to the defendant was amply sufficient to convey the fee simple in the property, and an affirmance of the judgment of the court below necessarily follows.

Judgment affirmed. The other judges concur.