## MELVINA PATTERSON

*v.*

## RICHARD A. LAWRENCE.

1. MARRIED WOMEN—*contracts and deeds—estoppel by fraudulent representations.* While contracts and agreements of a married woman, respecting her real estate, and conveyances thereof by her without her husband uniting in the execution thereof, made in 1868, if free from fraud, could not be enforced at law or in equity, yet if a married woman makes a contract or agreement, respecting her real estate, with another by fraudulent means, and thereby obtains an inequitable advantage, a court of equity will hold her estopped from setting up her coverture to retain the advantage, and require her to perform the contract, if executory, and prevent her from avoiding the same, if executed, or will compel her to place the other party *in statu quo* before she will be allowed to rescind or repudiate such contract or agreement, as the equities of the case may require.

2. Where a married woman, in 1868, holding the title to real estate in the name she had before marriage, applied for a loan of money, and fraudulently concealed her marriage, representing herself as a widow, and thereby procured the loan upon the execution of a deed of trust upon such real estate in her former name, without her husband joining therein, it was *held*, that in equity she could not avoid the conveyance and retain the money thus fraudulently obtained, and a lien was decreed upon the land for the amount due, and a sale ordered in default of its payment.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. S. MURPHY, for the plaintiff in error.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of August, 1867, Melvina Brazee was married to one Robert Patterson. On the second day of the following September she obtained a conveyance of lot 9, in block 45, of the original plat of the city of Galesburg. The conveyance was to her by the name of Melvina Brazee, which was her

name by a former husband, from whom she was divorced. On the same day she executed, by the same name, a deed of trust to O. F. Price, for the use of N. Brisco, on this lot, to secure the payment of $600, which sum she paid for the lot. On the 8th of September, 1868, she went to one McChesney, an insurance and loan agent, to procure a loan of money, introducing herself as Mrs. Brazee, saying her property was advertised for sale under the trust deed, and she would lose it unless she could procure $600. McChesney stated the facts to R. A. Lawrence. Lawrence offered to loan the money to her if she would secure its payment. The title was examined, and found to be in her name as Brazee, and being asked by McChesney if she was a widow, she answered she was. Being satisfied with the title and security, Lawrence loaned the money, and took two notes, of $300 each, drawing ten per cent interest, executed by her in the name of Melvina Brazee, and also a trust deed on the lot, in the same name. Failing to pay the interest at the expiration of a year, she requested the loan of $40, which Lawrence let her have, and took a note for $100 to cover the interest and this loan, securing the same by a second trust deed, executed in the same manner. Failing to make payment at the end of the second year, the property was advertised and sold under these trust deeds, and purchased by Lawrence for the amount of the debt, interest and costs, and he received a conveyance from the trustee.

It also appears, that Mrs. Patterson took a lease in the name of Brazee, and an agreement, that on the payment of $900 by the 1st of February, 1871, Lawrence would convey the premises to her. On the termination of the lease she refused to surrender possession. Thereupon, Lawrence commenced an action of forcible detainer, to recover possession, and at the trial she produced the certificate of her marriage to Patterson, which seems to have been the first information which came to Lawrence's knowledge that she was a married woman, or her name was not Brazee. That suit was dismissed, and a bill in chancery was filed, setting up the facts, charging fraud in pro-

curing the money and in the execution of the trust deeds, and alleging that there was due $798—that the property belonged to Mrs. Patterson, and her husband had no interest therein. The bill charges, that by reason of the fraudulent concealment of her marriage, and the husband not joining in executing the trust deeds, the fee to the lot did not pass by the sale to complainant, and prays that the title be decreed to be in complainant, and for other and further relief.

An answer was filed, admitting that she executed the trust deeds in the name of Brazee because the title was so conveyed to her, and she supposed it was necessary, to convey title; sets up her coverture, and denies all fraud on her part, and the indebtedness is that of the husband, and not of the wife; denies all right to relief. A replication was filed.

On a hearing, the court below, on bill, answer, replication and proofs, found for complainant, found the amount due, and ordered that in default of its payment in thirty days the master sell the lot, on the usual notice, subject to redemption. Defendant, Melvina Patterson, brings the record to this court on error, and asks a reversal.

It is urged in affirmance, and as the court below found, that this loan was obtained by fraud. On the other side it is claimed, and set up in the answer, that plaintiff in error intended, at the time, to execute the trust deeds in such a manner as to be valid and binding—that no fraud was intended and none was perpetrated. McChesney swears positively that he asked her the question whether she was a widow, and she said she was, and that this was before the loan was made; and defendant in error testified that she always represented herself to him as a single woman. On the contrary, plaintiff in error denies that she ever made such statements to either of them. It is insisted that she is corroborated by Dr. McDowell, with whom she consulted at McChesney's office, on the day she says she obtained the money, in reference to the sickness of her husband; but they state McChesney or defendant in error was not present.

This evidence, we think, strongly preponderates in favor of defendant in error. He and McChesney seem to testify fairly. On the other hand, plaintiff in error seems to have, from the beginning, acted in bad faith. She introduced herself to McChesney, and defendant in error says to his family, as Mrs. Brazee. We apprehend no one is so ignorant as not to know, in this country, that the name of the wife is, by the marriage, changed to that of the husband. She, then, must have known, when she passed herself by the name of her former husband, that she was stating what was not true,—that if believed, she was deceiving defendant in error,—and that he was relying on such statement. She could not have been so ignorant as not to have known that she was not signing her name to the notes and trust deeds. Why, if not for fraudulent purposes, did she thus give her name and so sign these papers? She says she supposed it was necessary because the deed was in that name. She should have given her true name, and it was a fraud to conceal it. If an unmarried woman, a widow, using her former name, were to so act, would not all persons say that such person was guilty of fraud? That concealing their own name and the use of the name of another, or a fictitious name, is evidence of deliberate, intentional fraud? Would any one credit the pretense that the party supposed he was acting properly? Then, why should this be distinguished from the supposed case?

We are clearly of opinion that plaintiff in error was guilty of fraud in misrepresenting her name, in using a fictitious name, and, also, in concealing her name, when she must have known that defendant in error would not have loaned the money and taken the trust deeds, without her husband joining with her in their execution, if she had given her true name and disclosed the fact that she was married.

Plaintiff in error testified, her husband told her to come from Burlington to Galesburg and do the best she could; that she transacted the business and got the loan before she returned. When she got back she told him she had transacted

her business satisfactorily. Now, it is but a reasonable inference to suppose she consulted with her husband in reference to this business, and it would not be a violent presumption to conclude it was planned and arranged between them that she should pass herself by the name of her former husband in procuring the loan, and this would be more easily done as she was known by that name by her neighbors. It is not probable she would take so important a step without consulting with her husband as to the manner in which it should be done.

We are unable to find any feature in this case that commends it to our sense of right. To permit plaintiff in error to retain the money and property would be unjust in the extreme, and surely can not comport with equity and good conscience. It is not denied that if plaintiff in error intentionally committed a fraud she would be estopped to deny the effect of the execution of the deeds of trust. That she, in fact, committed a fraud, there would seem to be no doubt, and if permitted to escape liability on her deeds, she would have consummated a palpable wrong. She purchases property, borrows money to pay for it by pledging it, and then refuses to pay, and insists that the instruments pledging it are void, although she says she then acted in good faith, and intended to bind the property for the payment of the money.

This court, in the case of *Oglesby Coal Company* v. *Pasco*, 79 Ill. 164, reviewed the authorities, and announced the rule that a married woman may preclude herself from denying the truth of her representations in cases of torts, but where her conduct relates to contract, there can be no estoppel. So, in the cases of *Schwartz* v. *Saunders*, 46 Ill. 18, and *Anderson* v. *Armstead*, 69 id. 452, it was held that where a wife fraudulently permitted her husband to represent himself as the owner of her separate property, and procure mechanics to make valuable improvements thereon, without disclosing her ownership or repudiating his authority, she is estopped afterwards from denying his authority to cause the improvements to be made, when the mechanics seek to enforce their liens for

payment of the amount due them for work done on the faith of the husband's authority.

The true doctrine is, that contracts and agreements of married women in reference to their real estate, when not joined therein by their husbands, where such agreement is free from fraud, can not be enforced at law or in equity. But where married women make such contracts or agreements by fraudulent means, and thus obtain inequitable advantages, a court of chancery will hold them estopped from setting up and relying on their coverture to retain the advantage. The court will require them to execute and perform the contract, if executory, or prevent them from avoiding it if executed, or will compel them to place the other party *in statu quo* before they will be allowed to rescind or repudiate such agreements or contracts. Whether the one or the other form of relief will be granted, must depend upon the equities of the case.

Here, plaintiff in error, by fraudulently concealing her marriage, and by declaring she was a widow when asked the question by the agent of defendant in error, gained an inequitable and unjust advantage of defendant in error, if she shall be permitted to retain the money she thus obtained and also to recover the land. She must be held to pay the money, or a lien for the same will be enforced against the premises she professed to mortgage to secure its payment. She must be held estopped from relying on her coverture to escape its payment.

We perceive no error in the record, and the decree of the court below must be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT, dissenting: The real estate embraced in the trust deeds was acquired by defendant since her marriage with her co-defendant, is what is defined under our statute as strictly legal separate estate, and in respect to which she is subject to the ordinary disabilities resulting from coverture. As the law was at the time of making the trust deeds, a married

woman could not convey such property by absolute deed or mortgage without her husband joined with her. Nor could she pledge it for her own or her husband's debts as a married woman might pledge her separate estate, in the sense of that term as recognized and acted upon by a court of chancery. The distinction between legal separate estates under the statute and separate estates belonging to a married woman as recognized in equity, was stated by this court in *Bressler* v. *Kent*, 61 Ill. 426, and without further discussion I adopt the reasoning of that case as applicable to the case in hand. It follows from the principles declared in that case, that as defendant's husband did not join with her in the execution of the trust deeds, such deeds are void and ineffectual to pass any estate to the grantee. This court, in a recent case, held that a deed of a married woman void at law will not be enforced against her in equity. *Brooks* v. *Kearns*, 86 Ill. 547.

The only question presenting any difficulty is, whether defendant by her conduct is estopped to deny she was a single woman when she executed the trust deeds to secure her indebtedness to complainant. It is shown defendant had been a married woman for more than a year prior to making the trust deeds, and that her husband was then living. The fact of her marriage appears not only from the oral testimony, but from the public records of the county where the land is situated and where the parties all reside. Her marriage with her present husband was not a secret one, but was solemnized in the court house by a justice of the peace in the presence of witnesses. It is proven she did not hesitate to talk about her marriage, and on the day she negotiated the loan in the office of the agent acting for complainant, she consulted with a physician as to her husband's health, and obtained from him medicine to be given to him. It appears defendant had been married before and was divorced. The property was not obtained by defendant until after her second marriage, and it was then conveyed to her by the name of Melvina Brazee, which was her name while she was the wife of her former

husband. It was by that name she executed all of the trust deeds made by her, and that is said to be a device adopted by her to induce the belief she was a single woman. There is no doubt that defendant is an illiterate woman, and her explanation of using her former name in making the trust deeds was, that as the title was in her in that name, she thought it was necessary for her to convey it by that name to make the record appear all right. Before the negotiations for the loan were concluded, she made a proposition to the agent acting, and perhaps to complainant himself, that the title might be examined by a lawyer and she would pay the expense. It was examined and it was reported as being all perfect. Although complainant had an interview with defendant before the loan was made, it does not appear he asked her whether she was a single woman, but he says he supposed she was or he would not have let her had the money. The agent, however, says that in response to his inquiry, she told him she was a widow, but defendant most positively denies that she said any such thing, and affirms that she was not interrogated in that regard either by the agent or complainant. As before remarked, she freely conversed about her husband, on the day the loan was effected, in the office of the agent, with a physician who had a desk in the same room, while she was waiting for the agent to come. She had lived in the town several years and on the property mortgaged, after she bought it, and the slightest inquiry among the immediate neighbors would have disclosed whether defendant was a married or single woman. There is not a particle of evidence in the record, that I am able to discover, that even tends to prove she ever made any effort to conceal the fact of her second marriage, but, on the contrary, she as freely talked about her husband when occasion offered, as other women do. I am at a loss to discover anything in the conduct of defendant that ought, equitably, to estop her from asserting the truth as to the fact of her coverture at the time of making the trust deeds. That she was a married woman at the time stands admitted, and the record is singu-

larly barren of any evidence to show that she on any occasion attempted to conceal that fact either by word or act. Any one who deals with a person under disabilities does so at his peril. Such party must make reasonable effort to ascertain the character of the person with whom he is dealing, whether such person is under any disability, and if he fails to do so, he must abide the consequences.