[In Bank, February 12, 1883.]

## FERDINAND REIS, Appellant, *v.* FANNIE P. LAWRENCE, Respondent.

MARRIED WOMAN—DIVORCE—DEED—ACKNOWLEDGMENT—ESTOPPEL.—Where a decree of divorce obtained by a married woman is void, but she assumes her maiden name, lives apart from her husband, and continuously acts and represents herself as a *femme sole*, a deed of conveyance of her separate real estate, made and acknowledged by her as an unmarried woman, is valid and binding.

APPEAL from a judgment of the late District Court of the third judicial district in and for the county of Alameda, and from an order refusing a new trial.

The action was brought against Fannie P. Lawrence and Edwin A. Lawrence on a promissory note for money loaned, and to enforce a lien for the payment thereof arising from certain conveyances of real estate absolute on their face, but intended as security. A judgment was rendered on the note against Edwin A. Lawrence. The additional facts are stated in the opinion of the court, and the dissenting opinion of MR. JUSTICE McKEE.

LXIII. CAL.—9

*Edward J. Pringle*, for Appellant.

The respondent is estopped from denying the validity of her deed, because, in the desertion of her husband by herself, and of herself by her husband, the reasons which protect a married woman from the operation of an equitable estoppel cease. (*Lawrence* v. *Spear*, 17 Cal. 421; *Blumenberg* v. *Adams*, 49 Cal. 308; *Patterson* v. *Lawrence*, 90 Ill. 174; *Frary* v. *Booth*, 37 Vt. 78.)

She is estopped from denying the validity of her deed, because the reasons which protect a married woman from the operation of an equitable estoppel cease when she denies the very status which affords the protection.

. Granted that a married woman may not be estopped by her acts so long as her character is recognized or known, yet she is raised above or falls below this protection when she claims to have been divorced from her husband, resumes her maiden name, and acts, signs, and conveys as a single woman. All the sense and reason of protecting her as a married woman then cease, or else she is a licensed plunderer. The question, then, is not whether a married woman can be estopped, but whether a woman shall not be estopped from calling herself married.

The defendant was married on the 13th of April, 1871; she obtained a decree of divorce from her husband on the ground that he had deserted her as early as the 1st of March, 1872; he then obtained a decree of divorce from her on the ground that she had deserted him in July, 1872.

Married for less than eleven months, and ever since deserting and deserted, divorcing and divorced! Truly she was not "much married," and was very much divorced. And yet she claims to invalidate a deed made during the period of the double desertion because she was not examined "without the hearing of" this husband.

A case completely in point is *Richeson* v. *Simmons*, 47 Mo. 20; and see *Ruger* v. *Heckel*, 28 N. Y. S. C. 489.

Our Code removing the disabilities of married women, and codifying the laws of estoppel does not exempt a married woman from their operation. (Code Civ. Proc. § 1962, subs. 2 and 3.)

We cannot, by judicial construction, add an element which the Code, having spoken on the subject, has industriously omitted.

*William Irvine,* for Respondent.

The doctrine of estoppel has no application. Points 2, 3, 4, and 5 of appellant's brief is devoted to a consideration of estoppel as applied to married women.

To answer them all at once it has been held time and again that a married woman is not bound by an estoppel. Her title to land can only pass by deed, and the acknowledgment is a part of the deed. (*Morrison* v. *Wilson,* 13 Cal. 494, *Ewald* v. *Corbett,* 32 Cal. 493; *Barrett* v. *Tewksbury,* 9 Cal. 13; *Kendall* v. *Miller,* 9 Cal. 591; *Selover* v. *Am. Rus. Co.* 7 Cal. 266; Wells on Sep. Prop. of Wife, § 267; *Looney* v. *Adamson,* 48 Tex. 619; *Marsh* v. *Mitchell,* 26 N. J. Eq. 497; *Ennor* v. *Thompson,* 46 Ill. 221; *Kerr* v. *Russell,* 69 Ill. 666; *Board* v. *Davidson,* 65 Ill. 124; *Robinson* v. *Noel,* 49 Miss. 253; *Stillwell* v. *Adams,* 29 Ark. 346; *Heaton* v. *Fryberger,* 38 Iowa, 185; *Leftwich* v. *Neal,* 7 W. Va. 560; *Grove* v. *Zumbro,* 14 Gratt. 507; *Lindley* v. *Smith,* 48 Ill. 523; *McIntosh* v. *Smith,* 2 La. An. 758; *Coal Co.* v. *Pasco,* 79 Ill. 170; *Behler* v. *Weyburn,* 59 Ind. 143; *Horsey's Lessee* v. *Horsey,* 4 Har. (Del.) 517.)

To permit an estoppel to operate against her would be a virtual repeal of the statute. (*Drury* v. *Foster,* 2 Wall. 24.)

The title of a *femme covert* to land cannot be affected by acts of commission short of those required by law to bind her, much less by acts of omission. (*Lessee of Delancey* v. *McKeen,* 1 Wash. C. C. 354.)

Estoppel does not conclude her, even when she represents herself as sole. (*Behler* v. *Weyburn,* 69 Ind. 143, and cases cited; 2 Hilliard Torts, 506; 48 Pa. St. 497; Well's Sep. Prop. of Wife, 277; see Bigelow on Estoppel, 490, 491; Herman on Estoppel, p. 236, § 215; *Hempstead* v. *Easton,* 33 Mo. 142; *Liverpool Assn.* v. *Fairhurst,* 9 Ex. 422; Cooley on Torts, pp. 116, 117; *Cooper* v. *Witham,* 1 Lev. 248; *Woodward* v. *Barnes,* 14 Am. Rep. 626; *Burnard* v. *Haggis,* 14 Com. B. N. S. 45; *Keen* v. *Coleman,* 39 Pa. St. 299; *Keen* v. *Hartman,* 48 Pa. St. 497; *Owens* v. *Snodgrass,* 6 Dana, 229; 2 Bishop on Married Women, § 263; *Tiernan* v. *Poor,* 19 Am. Dec. p. 230, note; *Carr* v. *Williams,* 36 Am. Dec. p. 90, note; *Klein* v. *Caldwell,* 91 Pa. St. 140.)

Ross, J.—The defendant, Edwin A. Lawrence, is the father

of the defendant Fannie P. Lawrence.  The latter married one Hiram Hutchinson, in the city of San Francisco, on the 13th of April, 1871.  In the year 1873 she went to the Territory of Utah for the purpose of obtaining a divorce from her husband, and on the 6th of May of that year filed in the Probate Court of Salt Lake County, Utah Territory, a petition in which she set forth that Hutchinson deserted and abandoned her on or about the first day of March, 1872, and had ever since continued his desertion and abandonment of her, and praying for a decree of divorce dissolving the bonds of matrimony existing between them.  On the 15th of July, 1873, the court in which the proceeding was had entered a decree purporting to dissolve the bonds of matrimony existing between Mr. and Mrs. Hutchinson, and restoring to the petitioner her maiden name.

From the view we take of the case before us it will not be necessary to determine whether or not the decree of the Probate Court of Utah was validated by subsequent congressional action.  Upon the entry of the decree on the 15th of July, 1873, Mrs. Hutchinson resumed her maiden name, and never afterwards lived with Hutchinson, but has ever since that date lived and acted as a single woman, and borne her maiden name.

On the 26th of May, 1874, she was the owner of a certain piece of land situated in Alameda County of this State, which was her separate property, it having been given to her by her father on the occasion of her marriage.  On the day last named she signed a power of attorney, very general in its terms, appointing her father her attorney in fact to (among other things) "lease, let, demise, bargain, sell, remise, release, convey, mortgage, and hypothecate" her said land upon such terms and conditions, and under such covenants as to him should seem fit. The power as well as the certificate of acknowledgment described the constituent as "Fannie P. Lawrence, formerly Fannie L. Hutchinson," and the power was so signed.  The certificate, however, did not conform to the requirements of our statute prescribing the form for certificates of acknowledgment of married women.

When the power of attorney, so signed and acknowledged, was received by Edwin A. Lawrence, the latter was the owner of various certificates of purchase issued by the State of Califor-

nia for State lands, on which Gustave Reis held a mortgage
executed to him by Lawrence. A part of the purchase-money
of the lands had been paid, but a part of it remained unpaid.
In due course of time an instalment became due. Lawrence
needed the money with which to make the payment. He nego-
tiated with Mr. E. B. Mastick for the loan of the required
amount on a mortgage he proposed to give on his daughter's
land under and by virtue of the power of attorney. The power,
the daughter testified on the trial of this case, she signed
unwillingly and only after urgent solicitation on the part of her
father; and in answer to the question "Why did your father
urge you to execute the power of attorney to which you have
referred?" she answered: "Because he said he had payments to
make on certain lands of his, and that in case of necessity he
wished to raise enough money on my property to meet that
demand; but that he hardly thought he would be obliged to do
so; but he wished to have the paper on hand, so in case of need
he could make use of it." In endeavoring to obtain money on
the strength of his daughter's land, Edwin A. Lawrence was,
therefore, but carrying out the purpose had in view by both
when the daughter gave him the power.

His negotiations with Mr. Mastick for a loan of the required
money failed of accomplishment on the last day allowed for the
payment of the instalment due upon the certificates of purchase.
In this extremity he applied to Gustave Reis for the loan of the
amount necessary to make the payment, viz., $4,550. Gustave
furnished a part of the money, but got the greater part of it
from Ferdinand Reis, who is the plaintiff in this action. The
loan was accordingly made, and as security for its payment
Edwin A. Lawrence executed to the plaintiff Reis a deed for the
Alameda land as attorney in fact for Fannie P. Lawrence. At
the time of this transaction, which took place on the 27th of
June, 1874, Edwin A. Lawrence represented to Reis that his
daughter had obtained a divorce from her husband in Salt
Lake, and had been restored to her maiden name. Subse-
quently, to wit, on the 18th of September, 1874, upon applica-
tion made on behalf of the plaintiff, Fannie P. Lawrence,
executed to plaintiff a deed for the same land described in the
deed already executed to him by her father as her attorney in

fact, which deed expressed a consideration of $4,500, and contained the clause: "This deed is given in confirmation of the deed given by me to said Reis on June 27, 1874, by my attorney in fact, hereby ratifying and confirming the same." The certificate of acknowledgment to this confirmatory deed described the grantor as "Fannie P. Lawrence (*femme sole*)," and complied with the requirements of the statute prescribing the form of such certificates for others than married women, but did not conform to those in respect to the latter.

The case further shows that in the month of July, 1877, Hutchinson commenced an action in the District Court of Marin County of this State against the defendant Fannie for the purpose of obtaining a decree dissolving the bonds of matrimony alleged to have existed between them since the 13th of April, 1871, on the ground that the defendant therein, on or about the 1st of July, 1872, deserted the plaintiff in that action, and from that time forth lived apart from him, and denied him all marital rights. After trial the court in which the action was brought decreed the plaintiff a divorce on the ground stated in his complaint.

We assume that the Utah decree was invalid. Nevertheless the fact remains that upon the rendition of that decree the defendant, Fannie P. Lawrence, resumed her maiden name, and thence hitherto continued to act and represent herself as a *femme sole*. As such she signed and acknowledged the power of attorney to her father for the purpose of enabling him to borrow money on the strength of her land. On the security of that land, and on those representations, the father did borrow money, and to secure its repayment executed to the lender, pursuant to the power, a deed for the premises. Subsequently, and in consideration of that loan, the daughter, still acting and representing herself as a *femme sole*, executed as such to the lender another deed for the premises, in which she recited that it was given in confirmation of the deed previously executed by her attorney in fact. At this day she seeks to avoid the effect of these conveyances to the injury of the party who parted with his money on the strength of her actions and representations by saying that she was all along a married woman, and that the certificates of acknowledgment to the instruments executed by her were not in

accordance with the form prescribed by statute for married women in that they did not recite that she was examined "without the hearing of her husband," a husband who, according to her petition for divorce filed in Utah, had deserted and abandoned her on the 1st day of March, 1872, and whom, according to the record put in evidence from the District Court of Marin County, she had deserted and abandoned in July of the same year, and between whom no marital relations other than the dry, legal relation in fact existed. Of course, under such circumstances the reason for the rule that requires, in cases of married women, the certificate of acknowledgment to recite an examination without the hearing of the husband, does not exist. At least as early as July, 1872, the defendant Fannie lived apart from, and independent of her husband. Later on, in 1873, she resumed her maiden name, and thence hitherto acted and represented herself as a single woman. In that character she executed the instruments in question, and in that character, in our opinion, a court of equity ought to regard her in the construction of them. (As giving support to these views, see *Richeson* v. *Simmons*, 47 Mo. 20; *Rosenthal* v. *Mayhugh*, 33 Ohio St. 155; *Patterson* v. *Lawrence*, 90 Ill. 174.)

. We find it unnecessary to determine whether the rules based on the common law relation of husband and wife are to be applied to their full extent in this State, where the wife is now by statute empowered to dispose of her separate estate without the consent or concurrence of her husband.

It follows that the plaintiff is entitled to the lien prayed for.

Judgment and order reversed, and cause remanded for a new trial.

MORRISON, C. J., SHARPSTEIN, J., and MYRICK, J., concurred.

McKEE, J.—I dissent. The case arises out of an equitable action brought by the plaintiff against the defendants to obtain a decree declaring an alleged conveyance of real estate, purporting to have been executed June 27, 1874, by the defendant, Fannie P. Lawrence, by her attorney in fact, Edwin A. Lawrence, to be a mortgage, given to secure payment of the following promissory note:—

"4,550.                    SAN FRANCISCO, June 27, 1874.

"Sixty days from date, for value received, we jointly and severally promise to pay to the order of Ferdinand Reis forty-five hundred and fifty dollars in U. S. gold coin, with interest at the rate of one and one quarter per cent per month till paid.

[Signed.]     FANNIE P. LAWRENCE,

"Formerly Fannie L. Hutchinson, by her attorney in fact, Edwin A. Lawrence.

"E. A. LAWRENCE."

Neither the individual indebtedness of the defendant Fannie, nor the joint indebtedness of her and the defendant Edwin, constituted any part of the consideration of the note. It was given solely for the individual indebtedness of the defendant Edwin A. Lawrence. But both the note and deed were made and delivered by the latter under a pretended power of attorney, whereby the former attempted to constitute and appoint her father, the said Edwin, her attorney in fact, with authority to sell, convey, or mortgage her real estate, on such terms and conditions as to him might seem fit. Ratification of the conveyance made by him under the power was also attempted by her, by a formal deed dated September 18, 1874, which was signed "Fannie P. Lawrence," and subsequently by another deed dated in October, 1874, and signed by the same name. But at the times and dates of those transactions the defendant Fannie was a married woman, the lawful wife of one Hiram Hutchinson; and the real property described in the several instruments in writing was her separate property; and neither the power of attorney nor any of the pretended deeds were executed or acknowledged by her in any manner or form, to make it her act and deed, or to give any power or authority over or concerning her separate real property. It was supposed, however, that her status as the wife of Hiram Hutchinson had been changed by a decree of divorce.

The record shows that she was married to Hutchinson in the city of San Francisco, in the year 1871. There the parties were domiciled, and there, the wife at least, continued to be domiciled until some time in the year 1873, when she went to Salt Lake City, in the Territory of Utah, for the sole purpose of obtaining a fictitious domicile on which to commence proceedings against

her husband for a divorce. The husband appears to have been, at that time, domiciled in the city of New York. After remaining long enough in Salt Lake City to obtain a fictitious domicile under the laws of the Territory, the wife commenced proceedings for divorce by filing a complaint against her husband in the Probate Court of Salt Lake City, and causing a summons to be issued thereon; and after publication of the summons was had for a sufficient length of time under the statute of the Territory, a decree of divorce was entered in the case in her favor, and against her husband, who neither appeared in the proceedings, nor authorized an appearance for him by attorney or otherwise; and immediately after obtaining that decree the plaintiff therein returned to California.

A decree of divorce rendered in a State or Territory other than that in which the marriage of the parties was celebrated is void beyond the limit of the State or Territory where it was rendered, unless one of the parties to the proceedings for divorce had an actual *bona fide* domicile in the State or Territory. If neither of the parties were actually and in good faith domiciled in the State or Territory in which the decree was rendered, the decree is void in all other States and Territories. (*Hinds* v. *Hinds*, 1 Iowa, 36; *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 N. Y. 30; *Cheerer* v. *Wilson*, 9 Wall. 108; *Cox* v. *Cox*, 19 Ohio St. 502; *Sewall* v. *Sewall*, 122 Mass. 156; *Hood* v. *State*, 56 Ind. 263; *People* v. *Dawell*, 25 Mich. 247; *Litowich* v. *Litowich*, 19 Kan. 451.)

But the decree in this case was absolutely void, because, although the legislature of Utah had by statute authorized any Probate Court of the Territory to grant a divorce to any applicant residing in the county in which an action for divorce might be brought, yet the Supreme Court of the Territory in *Cast* v. *Cast*, 1 Utah, 122, decided that the statute, conferring upon the Probate Courts jurisdiction in divorce cases, was opposed to the organic law of the Territory and void; therefore the Utah decree of divorce was rendered by a court that had no jurisdiction of the subject-matter, nor of the persons to the action of *Hutchinson* v. *Hutchinson*, and the decree rendered therein was wholly void.

It is, however, claimed that the Congress of the United States

by an act passed June 23, 1874, "validated and confirmed all judgments and decrees rendered before that date by the Probate Courts of the Territory of Utah, which had been executed, and from which no appeals had been taken"; and that the decree under consideration was ratified and confirmed by that act.

Decrees of divorce are not enumerated in the statute. But it is said that they are comprehended by the phrase "all executed judgments and decrees from which no appeal has been taken." But the decree under consideration was not an existing or executed decree at the time of the passage of the act, because it had been adjudged by the Supreme Court of the Territory in which it was rendered absolutely void. Being no judgment, how could the legislature declare it to be a judgment? That which courts have adjudged void cannot be declared valid by legislation. A legislature can no more impart a binding efficacy to judicial proceedings which are void than it can take from a citizen his property and give it to another. Indeed, as has been said, to do the one thing is to accomplish the other, and therefore I understand it to be a principle of constitutional law, recognized by all courts, that the legislature can never by retrospective proceedings cure a defect of jurisdiction in the proceedings of courts. (*Nelson* v. *Rountree*, 23 Wis. 367; *Griffin* v. *Cunningham*, 20 Gratt. 109; *Pryor* v. *Downey*, 50 Cal. 388.) The reason is manifest. Such proceedings being utterly void, they would acquire vitality as judicial acts, if at all, by the legislative act exclusively, and the curative act must therefore be in its nature a judgment. (*McDaniel* v. *Correll et al.* 19 Ill. 226; *Denny* v. *Mattoon*, 2 Allen. 361; *State* v. *Doherty*, 60 Me. 504.)

But Congress had no power to render judgment in an action between parties that have never been before it. By the Constitution of the United States the judicial powers of the United States are vested in one Supreme Court, and in such inferior courts as Congress may, from time to time, ordain and establish. And the powers of the courts thus ordained and established extend to all possible cases in law and equity, or admiralty and maritime jurisdiction between citizens of domestic States and citizens and subjects of foreign states. With these courts, in the exercise of the judicial powers vested in them by law, Congress cannot interfere. It cannot dispense with them in States or

Territories, nor assume any of their functions, not even in the summons and selection of jurors, as the Supreme Court of the United States held in *Clinton* v. *Englebrecht,* 13 Wall. 434.

The Utah decree of divorce was, therefore, a nullity. (*Davis* v. *Commonwealth,* 13 Bush, 318; *The State* v. *Armington,* 25 Minn. 29; *Litowich* v. *Litowich,* 19 Kan. 451.) Being null, the status of the defendant Fannie was, at the times of the transactions under consideration, that of a married woman. As such, however, she was enabled by the laws of the State to alienate or encumber her real property, by herself or her legally authorized agent, in the mode prescribed by the law, but not otherwise. The law which removed her disabilities made her a *femme sole,* with capacity to act within the limits of the powers conferred upon her; but outside those limits she is still under disability to act. She has no power to change or transfer her real estate in any other mode than that prescribed by the law which conferred upon her power to deal with it at all. Any attempt by her to dispose of it otherwise than as the law directs, the law itself pronounces invalid and void. (§ 1487, Civ. Code; *Morrison* v. *Wilson,* 13 Cal. 495; *Camden* v. *Vail,* 23 Cal. 633; *Maclay* v. *Love,* 25 Cal. 368; *Landers* v. *Bolton,* 26 Cal. 393; *Smith* v. *Greer,* 31 Cal. 477.) The instruments in writing by which it is sought in this case to charge the separate real property of the wife were, therefore, void, because not executed in the mode prescribed by the law; there was neither in fact nor in law a transfer of her estate; that being so, can she be divested of her title by the courts? Can void transfers of her real estate be made valid? It is claimed that that may be done by the equitable doctrine of estoppel.

Equity, however, does not overturn, but follows the law. It never attempts to breathe life into a legal nonentity. Hence courts of equity have never attempted to divest a married woman of the title to her land by an estoppel *in pais.* "That," says the Supreme Court of Indiana in *Behler* v. *Weyburn,* 59 Ind. 143, "would be overturning the statute which prohibits all modes of encumbering or conveying her land save the one provided for." The same question was involved in the case of *Lowell* v. *Daniels,* 2 Gray, 161, in which the court said: "This raises the material question at issue between the parties, whether

a married woman and her heirs may be barred of her estate by an estoppel *in pais?* She can make no valid contract in relation to her estate. Her separate deed of it is absolutely void. If she were to covenant that she was sole, was seized in her own right, and had full power to convey, such covenants would avail the grantee nothing. She could not be estopped by them. The law has rendered her incapable of such a contract, and she finds in her incapacity her weakness. . . . . And we think a married woman cannot do indirectly what she cannot do directly; cannot do by acts *in pais* what she cannot do by deed. She cannot by her own act enlarge her legal capacity to convey an estate.

"This doctrine of estoppel *in pais* would seem to be stated broadly enough when it is said that such estoppel is as effectual as the deed of the party. To say that one may, by acts in the country, by admission, by concealment, or by silence, in effect do what could not be done by deed would be practically to dispense with all the limitations the law has imposed upon the capacity of married women to alienate their estates. No case at law has been cited, nor have we found one in which it has been held that the estate of a party has been barred by an estoppel *in pais*, who was incapable of conveying by deed."

To the same effect will be found the cases of *Todd* v. *The Pittsburg and Fort Wayne Railroad Company*, 19 Ohio St. 514; *Drury* v. *Foster*, 2 Wall. 24; *Petit* v. *Fretz*, 9 Casey, 118; *Glidden* v. *Strupler*, 52 Pa. St. 400 ; *Rumfelt* v. *Clemens*, 46 Pa. St. 456.) Says Mr. Justice Agnew in the case last cited: "There is no such doctrine in equity as that an estoppel *in pais* shall work a transfer of the legal title to lands belonging to a married woman. If there were it would be a flat denial of a legislative policy, founded on the most important reasons, entering into the very constitution of society, and social order must lie at the feet of chancery."

I do not deny that a married woman may be estopped in cases of pure torts (*Oglesby* v. *Pasco*, 79 Ill. 164), or in cases of fraud where innocent parties, induced by the intentional and fraudulent conduct of the wife, may have acquired rights of property upon the faith of ownership in the husband. (*Drake* v. *Glover*, 30 Ala. 382; *Connolly* v. *Branstlor*, 3 Bush, 702.) Fraud of course vitiates every contract. "But even this doctrine when

applied to married women is," said Mr. Justice Baldwin, in
*Morrison* v. *Wilson, supra*, "limited under statutes like ours to
this: that the contract of a married woman effected by fraud
cannot be enforced; but not that a fraudulent representation
will divest a *femme's* title in the face of a statute declaring a dif-
ferent and exclusive mode of divestiture," and *a fortiori* she will
not be divested of the title where she has not been guilty of
fraudulent representation. And that is this case; there was no
fraudulent representation by the *femme covert*, for the person with
whom her father negotiated for a loan of the money involved in
the case testified at the trial that the father produced the power
of attorney, note, and conveyance upon which he wanted to bor-
row the amount of the note, and represented that his daughter
had been divorced from her husband in Salt Lake City, and had
resumed her maiden name, and that the power of attorney was
in all respects regular. Yet the money was not loaned upon
these representations. The plaintiff took the advice of his coun-
sel upon the validity and sufficiency of the securities, and acting
upon that advice lent his money to the father upon the faith of
the securities. In the transaction there was no fraud. All the
parties to it, including the attorneys of the plaintiff, believed
that the decree of divorce was valid. The woman believed it,
and resumed her maiden name; the plaintiff believed it, and
lent his money. There was no attempt at deception or fraud.
Each one had the same means and opportunity for knowledge
and judgment as to the subject of the divorce; and the opinion
which was entertained in relation to it was simply a mistake of
law. But an estoppel *in pais* does not arise out of a mistake.
It can arise only out of such proof as would be sufficient to
maintain an action for deceit or false representation. (*Real
Estate Co. v. Balch*, 45 N. Y. 529.)

"In order to constitute an equitable estoppel with respect to
the title of property it must appear that the party to be estopped
has made admissions or declarations, or done acts, *with the inten-
tion of deceiving* the other party with regard to the title, or with
such carelessness, or culpable negligence, as to amount to a con-
structive fraud; and, that at the time of making the admissions
or declarations, or doing the act, he was apprised of the true
state of his own title, and that the other party was not only des-

titute of all knowledge of the true state of the title, but also of all convenient or ready means of acquiring such knowledge." (*Davis* v. *Davis*, 26 Cal. 23.)

None of these elements are to be found in this case. The simple facts are that the defendant Fannie obtained a decree of divorce from her husband, which she believed, in common with her father and the plaintiff and his attorneys, was valid; that upon that belief she resumed her maiden name and signed it, in good faith, to all the papers in the transactions in question. It is not found, nor is it claimed, that she represented herself as an unmarried woman, or signed her maiden name to the papers knowingly and intentionally, or fraudulently. Her representation and signatures were simply mistakes by her and by all concerned, the results of which she could not ratify by instruments in writing which were also void. (§§ 2310, 2312, 2314, Civ. Code.) But if her acts had been wrong in the abstract, or if she had acted in bad faith, the wrong could not make her contract good by way of estoppel. "We do not see," says the Supreme Court of Pennsylvania, in *Keen* v. *Coleman*, 39 Pa. St. 302, "how there can be an estoppel involved in the very acts to which the incapacity relates that can take away the incapacity. If a legal incapacity can be removed by a fraudulent representation of capacity, then the legal incapacity would have only a moral force, which is absurd." (See also *Wilson S. M. Co.* v. *Fuller*, 60 How. Pr. 480; *Hoffman* v. *Hoffman*, 46 N. Y. 30; *Kerr* v. *Kerr*, 41 N. Y. 272; *Cheever* v. *Wilson*, 9 Wall. 108; *Cox* v. *Cox*, 19 Ohio St. 502; *Sewall* v. *Sewall*, 122 Mass. 156; *Hood* v. *The State*, 56 Ind. 263; *People* v. *Dawell*, 25 Mich. 247; *Litowich* v. *Litowich*, 19 Kan. 451; *Van Fossen* v. *The State*, 37 Ohio St. 320; *Hinds* v. *Hinds*, 1 Iowa, 36.)

The cases of *Patterson* v. *Lawrence*, 90 Ill. 174, and *Richeson* v. *Simmons*, 47 Mo. 20, referred to in the prevailing opinion have no application, in my judgment, to the case in hand. The first was an action founded upon an actual fraud, and the second upon a special contract by the trustees of a married woman, acting under a deed of trust. Neither of them involved the question of the disability or capacity of a married woman to contract in the face of a statute which established the mode of contracting.

THORNTON, J.—I dissent.  I see no element of estoppel in this case.  The plaintiff had knowledge of all the facts, or ready and accessible means of knowledge, which is always held to be equivalent to knowledge.  The plaintiff was not deceived, and without some element of fraud or deceit there can be no estoppel. (*Davis* v. *Davis*, 26 Cal. 23, where the Supreme Court of this State has spoken in unmistakable terms.)

The decree of divorce rendered by the Probate Court of Utah is void.  That court had no jurisdiction of the subject-matter. (*Cast* v. *Cast*, 1 Utah, 122; *Ferris* v. *Higley*, 20 Wall. 375.) This decree was not confirmed by the act of Congress of June 23, 1873.  I do not think it came within the terms of the act, and if it did Congress had no power to confirm a void decree. (See Cooley's Principles of Constitutional Law, 325.)

Petition for a rehearing denied.