## In re PARK'S ESTATE.

## In re HILTON'S PETITION.

### No. 1593 (81 Pac. 83).

APPEAL—REVIEW—EVIDENCE.—On appeal, on an issue as to whether a woman had become the lawful wife of a decedent, under the practices and ceremonials of the Mormon Church, the court could not consider evidence in another case, and evidence introduced before a committee of the United States Senate.

### (Decided May 25, 1905.)

APPEAL from District Court, Salt Lake County: W. C. Hall, Judge.

Proceedings on the settlement of the estate of John R. Park, deceased. Petition of Annie F. A. Hilton for partition and distribution of decedent's real estate, to which objections were filed, and from a decree appointing commissioners in partition the executor of deceased appeals.

AFFIRMED.

*N. V. Jones* for petitioner.

*Stewart & Stewart* for objectors and protestants.

### APPELLANT'S POINTS.

The question to be determined is: "Can the alleged widow of the decedent compel a partition of her one-third interest in the real property belonging to the estate, before the estate is in a condition to be closed up and the expenses of the administration of the estate cannot be determined, and while the rights of all to the real property belonging to said estate are uncertain and indefinite and cannot at the time of said petition for partition be determined and while it is

certain that enormous expenses will be incurred in preserving the estate by reason of pending and prospective litigation caused by the petitioner, the alleged widow, who is striving in the courts to get a one-third interest of all of the property which the decedent possessed during his alleged marrige with the petitioner?" Our contention is that all debts of the decedent which could be satisfied out of the property, both real and personal, belonging to decedent at the time of his death, can be satisfied out of the estate's property, except as reserved in sections 3846, 3847 and 2829, Revised Statutes of Utah 1898. (See secs. 2803, 2804, 2805, Revised Statutes of Utah 1898; Woerner on Law of Administration, sec. 497, pages 1112-1114; Woerner on Law of Administration, sec. 493; Woerner on Law of Administration, sec. 491, pages 1097-1098; *Worth v. Worth,* 95 N. C., 239-243; Woerner, sec. 489-490; Woerner. sec. 562, star page 1234.) Assets should be left to meet possible contingency. (*Bennett's Estate,* 132 Pa. St. 201.)

The widow of an estate cannot come into court for her distributive share before the settlement of the husband's estate, or when there is not enough received to pay contested claims. (*Wade v. Potter,* 14 N. J. Law 278; *Ray Crocker's Estate,* 105 Cal. 368.) The Supreme Court of Utah, in the *Ray Thorn Estate* (24 Utah 209), held that in all cases the estate, both real and personal property, no matter how small the value of the estate may be, is chargeable with and must pay the expenses of administration.

On the grounds of public policy, public morality and public decency, appellant is estopped from abtaining any relief whatsoever, in this case, or from claiming or asserting that she is, or ever was, the wife of John R. Park. Where a woman accepts the benefits of a void decree, she is estopped from claiming any interest, whatsoever, in the deceased husband's estate. (*Ellis v. White,* 61 Iowa 644; *Garner v. Garner,* 38 Ind. 139; *Prater v. Prater,* 87 Tenn. 78, 9 S. W. 361; *Ducke v. Reed,* 64 Tex. 706; *Sedlack v. Sedlack,* 14 Ore. 540, 13 Pac. 452; *Israel v. Arthur,* 25 Pac. 82; *Mohler v. Shank,* 34 L. R. A. 161; *Randall v. Randall,* 37 Mich. 563; *Yors-*

*ton v. Yorston,* 32 N. J. Eq. 459; *Nichols v. Nichols,* 25 N. J. Eq. 60; *Authur v. Arthur,* 10 L. R. A. 693.)

Appellant should not be permitted to maintain this suit or to obtain any relief herein, on the ground that she has been guilty of gross laches. (*Whitney v. Fox.,* 166 U. S. 637; *Speidel v. Henrici,* 120 U. S. 387; *Hammond v. Hopkins,* 143 U. S. 250.)

### RESPONDENT'S POINTS.

What is reviewable on this appeal? The decrees hereinbefore described in the statement of facts, in the three several cases, which recognized and settled the status of the respondent herein, as the surviving wife and widow of the decedent Park, and which adjudged and decreed her to be an owned and entitled to an undivided one-third interest in all of the real property of the decedent, stand unchallenged; and as valid judgments and decrees made under the remittiturs sent down from this court in the several cases. Neither of the decrees above mentioned are reviewable by this court at this time for the reason that they were the very judgments directed to be entered by this court; and for a further reason, because no appeal has been taken from either of those decrees. It may be stated also that appeals would not lie from such decrees because they were entered in exact accordance with the mandate of this court. Quaere: What is before this court for review?

It is clearly shown by reference to the records of the three cases above named, and an examination of the grounds of this appeal, that everything attempted to be raised, on this second appeal, is *res adjudicata.* It is as clearly shown, that the question discussed in appellant's brief can not under any recognized rule, be reviewed by this court. The appellants seek to reopen the question of the respondent's marriage status when they have not appealed from the decrees, three in number, which have so established her status. So that respondent confidently submits, that this second appeal cannot be entertained, but must be dismissed under one or all of the rules stated, viz., *res adjudicata, stare decisis* or *the law of*

*the case.* Upon the rule of the law of the case this court has a line of well considered decisions, some of which are as follows: In the case of *First Nat. Bank v. Lewis* (Utah), 45 Pac. 890, the court says:) "An appeal from a judgment which the district court entered in exact accordance with the mandate of the appellate court, upon a previous appeal, will be dismissed upon motion of the appellee." (Syllabus of tho court 1896;) *Brim v. Jones,* 41 Pac. 46; *People's Bldg. Assn. v. Fowble,*—Utah—.)

If this appeal should not be dismissed on motion of the appellee, then there remains but one point to be determined, and that is: Has this court jurisdiction to deny to respondent the possession of her separate estate, which has been distributed to her by the lower court, because forsooth, she threatens to go into court and make a legal demand against an outside person, a grantee of the decedent, for an alleged widow's interest in property conveyed by the decedent in his lifetime without the widow's consent? This point is referred to at page seventeen of appellant's brief, although it is not fairly or propertly stated. The record shows that there is no pending litigation over the real property of the estate; that there are no outstanding debts of the estate; that the estate has approximately $35,000 in property; of which, about $20,000 is in real estate, and about $15,000 in personal property.

There are three things necessary for the court to determine, upon the widow's application for dower, or the estate allowed her in lieu of dower. They are, first, the marriage, second, the seizing of the husband, and third, the death of the husband. When those three points are determined favorably to the widow, it is then mandatory upon the court to "set apart as her separate property in fee simple" the widow's third. (Sec. 2826, R. S. Utah.) This section of the statute further provides, that, "property distributed under the provisions of this section shall be free from all debts of the decedent, except those secured by mechanic's or labor's liens for work or labor done or materials furnished exclusively for the improvement of the same, and except those created for

the purchase thereof, and for taxes levied thereon. . . .
In cases wherein only the heirs, devisees, and legatees of the
decedent are interested, the property secured to the widow by
this section, may be set off by the court in due process of administration."

When the court having jurisdiction of the subject-matter,
has acquired jurisdiction of the person also and adjudicat-
ed the matter, it is *res adjudicata* for all purposes. Such a
judgment is admissible in evidence against strangers. (Abb.
Trial Ev. (2 Ed.), 128; Brad. on Ev. (2 Ed.), pp. 108, 110
112 and citation 117; 24 Am. and Eng. Enc. Law, (2 Ed.),
p. 755; Herman on Est. and Res Adjudicata, pp. 79 to
81, 115 , 136-7; Probate Decrees, pp. 376-8.) In *Bonella v.
Manduel*: "The final judgment as to the status of a person,
as being a legitimate child of a decedent entitled to inherit
is *res adjudicata* as to all the world." (26 La. Ann. 112
[1874].)

BARTCH, C. J.

In the case of *Hilton v. Roylance,* 25 Utah 129, 69 Pac.
660, 58 L. R. A. 723, 95 Am. St. Rep. 821, it was, *inter alia,*
held and decided that the petitioner herein, who was the
plaintiff therein, was the lawful wife of John R. Park, and
that upon his death "she became his lawful widow, and entitled to her share in his estate as such widow." The final
judgment and decree in that case were entered by the lower court pursuant to the mandate of this court. The petitioner then presented the petition herein to the court, praying that one-third in value of all the rents, issues, and profits
arising from the decedents's real property since his death be
distributed and set apart to her, and that the court partition
and set apart to her, as her separate estate, an undivided one-
third interest in value, in fee, of all the real property belonging to the estate, free and clear from all debts of the deceased·
At the hearing the prayer of the petition was granted, commissioners in partition were appointed, their report, setting
apart one-third of the property to the widow, confirmed, and

a decree entered accordingly. This appeal is from that decree and judgment.

The counsel for the executor and appellant again attack the marriage status of the petitioner, and strenuously insist that she is not the lawful widow of the deceased, and that this court wrongfully held in the *Roylance Case* that a "sealing ceremony" performed in obedience to the alleged revealed doctrine of the Mormon Church was in effect a marriage ceremony at common law. In their zeal to have this court reverse its former holding in substantially the same case, and now hold that a sealing ceremony does not necessarily, and did not in the case of the petitioner, established the marriage status, they endeavor to brush aside the law of the case. They again refer to the facts, and discuss the questions of law which were before us on the former appeal, and which were then considered and decided with that care and deliberation which the importance of the case demanded. They not only refer to and again discuss the facts disclosed by the record on that appeal, but, in violation of the established pratice, go outside of what would be a proper record, refer to and discuss evidence introduced in an entirely different case, which has not yet been before us, and even resort to evidence introduced before the committee on privileges and elections in the Senate of the United States at the hearing in the contest to test the right of Senator Reed Smoot to retain his seat in the United States Senate. Counsel ought to understand that such evidence *aliunde* can be of no avail on this appeal. But even if we were to throw down the bars and consider this class of testimony, having no proper place in the record, still in our judgment, the correctness of our former decision would not be shaken in the least.

Counsel for the appellant, however, with reference to this court's interpretation of the terms "sealing" and "sealing ceremony," say:

"The errors into which the court has fallen are consequent upon the adoption of the idea that the works from which quotations are made form the

only doctrines or rules of the Church of Jesus Christ of Latter-Day Saints in reference to marriage, while the fact is that all of them relate simply to one feature of the marriage ordinances of that church, namely, the sealing of living persons in marriage for time and eternity."

In answer to this it may be observed that counsel even now have referred us to no other works than those examined and considered on the former occasion, nor have they referred us to any other revelation of the Mormon Church on the subject of matrimony than the one construed in our former opinion; nor, if we now were to consider the extrinsic evidence hereinbefore refered to, would, under any reasonable interpretation of the revelation, that evidence sustain their contention, for it appears therefrom that "sealing for eternity" is, except in very rare instances, performed only in cases where one of the parties is dead, and not where, as here, both were living. From that testimony it appears that a question was propounded to the president of the Church by the chairman of the Senate committee, in the case of Senator Smoot, as follows: "Is the sealing for eternity ever permitted between two living mortals?" To this President Smith, who, according to the tenet of the Mormon Church, holds the key to the power to solemnize marriages, answered: "I have heard, Mr. Chairman, of one or two instances of that kind." If such a witness, the very head of the church, in his lifelong experience has heard of but one or two instances of sealing for eternity between the living, how can it be said that such sealing is a rule of the church, or that this court has fallen into error in holding that a sealing ceremony, such as is expressly authorized by what is claimed to be the revealed law, and performed by a duly authorized officer of the church in the ordinary manner, is a marriage ceremony valid at common law, and creates the marriage status? It thus seems clear that if we were to violate the familiar rules of evidence, and consider the class of testimony referred to, it could not avail the appellant.

Although we have adverted, for the sake of argument, to matters not properly in this record, we have found nothing which militates against the construction placed upon the revelation, nor against the doctrine announced in the *Roylance Case,* and we therefore again affirm that decision. The fact that the petitioner herein has brought or may institute suits against third parties who purchased real property from the deceased in his lifetime, to recover an interest in such real property—she not having joined in the conveyances—cannot affect her marriage status. Whether she can now maintain such suits against innocent third parties who made such purchases ignorant of the status existing between her and the vender, or whether her conduct during the lifetime of the vender was such as to estop her from maintaining them, are questions which we do not decide ; the same not being material to this decision. Such questions can only be determined upon proper pleadings and proof. There is nothing in this case showing an estoppel. The decree and judgment challenged by this appeal are but the result of our own mandate. Nor do we find any error in the proceedings for the partition of the real property.

The judgment is therefore affirmed, with costs.

McCARTY, J., and ARMSTRONG, District Judge, concur.