## HILTON v. SLOAN et al.

No. 2055. Decided April 19, 1910 (108 Pac. 689).

1. COURTS—STARE DECISIS—OPERATION OF DOCTRINE. Where the specific ground of estoppel is alleged in an action and passed upon, the decision is not a ruling on all other grounds of estoppel, so as to be *stare decisis* as to such grounds. (Page 363.)

2. DOWER—ESTOPPEL TO CLAIM. Complainant was married, and afterwards, in 1873, she and her husband obtained a purported divorce from the church, which was in fact invalid. Complainant and her husband lived apart thereafter until 1900, when the latter died, and during that time complainant never asked for or received aid from her husband, and they both lived as unmarried persons, and complainant went by her maiden name until 1875, when she married another in the same city in which she and her first husband lived, and complainant was thereafter known by the name of her second husband, and in 1887—89 she joined her second husband in conveyances which were recorded, and complainant raised a large family by her second husband. After their alleged divorce, her first husband conveyed the property in controversy as an unmarried man; he then living near such property. At least six months before his death complainant was informed of a decision of the court holding church divorces invalid, but continued to live with her second husband as husband and wife. *Held*, that complainant was estopped, as against *bona fide* grantees of her husband after their alleged divorce or purchasers therefrom, from claiming dower in the land sold by him. (Page 364.)

3. ESTOPPEL—ESTOPPEL IN PAIS—KNOWLEDGE OF FACTS—NECESSITY. In order to be estopped, one need not in every case know the truth concerning material facts·or intend to deceive the person injured if, under the circumstances, he had a reasonable means of ascertaining such facts. (Page 372.)

4. ESTOPPEL—EQUITABLE ESTOPPEL—SILENCE. Inaction or silence may under some circumstances amount to a misrepresentation and concealment of the true facts, so as to raise an equitable estoppel. (Page 373.)

5. ESTOPPEL—EQUITABLE ESTOPPEL—NATURE OF DOCTRINE—"ESTOPPEL IN PAIS." The doctrine of "estoppel in pais" is an equitable doctrine originally applied to prevent an advantage to be taken of strict legal rights, and the equities of the particular facts must control in applying it. (Page 374.)

6. ACTION—EQUITABLE DEFENSE—ESTOPPEL—DOWER. In view of Const., art. 8, sec. 19, providing that there shall be but one form of action for the administration of both law and equity, an equitable estoppel may be pleaded as a defense in a legal action for dower. (Page 374.)

7. DOWER—CONVEYANCE BY HUSBAND—BONA FIDE PURCHASERS. Ordinary a claim of dower cannot be defeated by a claim of a *bona fide* purchaser of the land from the husband. (Page 378.)

8. ESTOPPEL—EQUITABLE ESTOPPEL. When one of two innocent purchasers must suffer by the acts of a third person, he who has enabled the latter to cause the loss must sustain it. (Page 379.)

9. DOWER—NATURE OF RIGHT. Dower is merely an inchoate right which may never become a vested interest. (Page 379.)

10. DOWER—DEFENSES—ESTOPPEL. The wife's right to dower is not affected by the husband's representations upon selling the land that he is unmarried unless she permits innocent persons to deal with him in good faith as an unmarried man with actual or constructive knowledge of his representations. (Page 379.)

11. ESTOPPEL—EQUITABLE ESTOPPEL—PERSONS ENTITLED—GRANTEES. One purchasing land from another who was entitled to invoke an estoppel as against claimants thereto may himself rely on the estoppel, though he had knowledge of facts when purchasing which would have prevented his grantor from invoking the estoppel had the latter known them. (Page 383.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Separate actions by Annie F. A. Hilton against Robert W. Sloan and others; against Adolph M. Anderson and others; against Everard Bierer, Jr., and others; against Fred Stauffer and others; against Nellie M. Blair and others; against Salt Lake City; against Mae C. Beamer and others; and against Elizabeth Goeghegan and others.

Judgment for plaintiff in each case.    Defendants appeal.

REVERSED WITH DIRECTIONS TO ENTER JUDGMENTS QUIETING TITLE IN DEFENDANTS.

See, also, Hilton v. Snyder, 37 Utah, 384, 108 Pac. 698.

*Barnard J. Stewart* for appellants.

*N. V. Jones (Ogden Hiles,* of counsel), for respondent.

FRICK, J.

The foregoing eight cases were tried together in the district court, are presented to this court in one record, and, as the decision in each one of them substantially depends upon the same state of facts and must be based upon the same legal and equitable principles, we shall, for the purposes of this opinion, treat them all as one case.

The actions were instituted by respondent to recover dower in certain real estate as the surviving widow of one Dr. John R. Park, deceased. The appellants dispute respondent's right to dower on two grounds: (1) That she is not the widow of said Dr. Park for the reason that respondent and said Park had never been married; and (2) that, even though they had at one time been married, respondent, by reason of her conduct, was estopped from successfully maintaining the actions to recover dower in the lands described in her complaints and of which appellants were in possession either as the purchasers or as the grantees from the purchasers of said Dr. Park, deceased. The pleas of estoppel are quite lengthy. It must suffice to say that the facts set forth in each of the pleas are sufficient in form and substance to entitle the appellants to prove equitable estoppels, or, as they are sometimes called, estoppels *in pais,* against respondent, if such estoppels are available in these actions as a defense. Upon a hearing of the cases, the trial court found the issue of marriage in favor of respondent; while upon the issue of estoppel the parties had stipulated the facts to be substantially as they were set forth in the several pleas, and the court found as a conclusion of law from the conceded facts that they did not constitute an estoppel, and thus both issues were resolved against appellants, and they now present the record to this court for review.

The principal errors assigned are: (1) That the court erred in its finding that the respondent and said Dr. Park were in fact married, and that they sustained the relation of husband and wife at his death; and (2) that, conceding that the respondent and said Dr. Park were in fact married, the court nevertheless erred in its conclusion of law that respondent was not estopped from successfully asserting her right to dower in the lands in question by reason of her conduct. The facts upon which this estoppel is claimed we shall refer to more fully hereinafter.

So far as the error relating to the finding of the marriage is concerned, we remark that the same grounds against such a finding are now urged that were insisted on in the cases

of *Hilton v. Roylance,* 25 Utah, 129, 69 Pac. 660, 58 L. R. A. 723, 95 Am. St. Rep. 821, and *Hilton v. Stewart,* 25 Utah, 161, 69 Pac. 671. Moreover, the evidence and all the facts and circumstances disclosed by the record before us are substantially the same as they were made to appear to this court by the records of the two cases referred to. While it is urged that there is some new evidence of an expert character relative to the difference between a so-called "sealing" and a marriage ceremony, we are of the opinion that this difference cannot affect the result as reached in *Hilton v. Roylance, supra.* We shall therefore not enter upon a discussion upon the question of marriage, but, for the purposes of this decision, we shall consider that question as settled by the case last referred to. The only question we shall discuss, therefore, is the question of estoppel.

Respondent asserts that this question has been settled by this court in the case of *Norton v. Tufts,* 19 Utah, 470, 57 Pac. 409, and in *Hilton v. Roylance, supra.* In the latter case respondent herein was appellant, and the question, she now insists, was there determined in her favor, and is therefore *stare decisis* at least. If the precise question now raised by appellant was in fact presented in the two cases referred to, or in either one of them, and was there considered and decided as respondent claims, then we ought not, except for the most cogent reasons, disturb the ruling there made. In order to determine whether respondent's conclusions are correct with respect to the scope and effect of those two decisions, we have not only had recourse to the text of the decisions, but have carefully examined the pleadings, the findings of fact, and the conclusions of law, the assignments of error, and the arguments of counsel as found in their briefs in those cases, and from all the matters above referred to have been forced to the conclusion that the precise question now presented for decision was not attempted to be, nor was it, decided in either of those cases. Mrs. Wickel, the dower claimant in the case of *Norton v. Tufts,* claimed to be the surviving widow of one Elbridge Tufts under circumstances somewhat

similar to those under which respondent claims to be the surviving widow of Dr. Park. The attorneys for Mr. Norton claimed that she was equitably estopped from claiming dower in the mortgaged premises as against Norton, the mortgagee, because she had permitted Mr. Tufts and the so-called Mrs. Tufts to live and cohabit together as husband and wife for a long period of time without any protest or objection, and, further, that she, under her "church divorce," had herself married Mr. Wickel, and by so doing had recognized the validity of the church divorce, and that by such conduct she had misled the public, and hence ought to be estopped from claiming any interest in Tuft's property as his surviving widow. The attorneys for Mrs. Wickel answered this contention by insisting that, while Mrs. Wickel did obtain a church divorce and in reliance upon its validity did intermarry with one John Wickel, she neverthe-less, as soon as she learned that the church divorce was void and of no effect, ceased to live and cohabit with the man whom she had married, and thereafter began an action against El-bridge Tufts, her husband, for a legal divorce, which action was pending when Mr. Norton obtained his interest in the premises in which Mrs. Wickel claimed her dower right, and that, in view of these facts, Mr. Norton knew of Mrs. Wickel's claim when he obtained the mortgage, and hence she was not equitably estopped as against Mr. Norton. From what this court in speaking through District Judge Rolapp said, it would seem that the decision in *Norton v. Tufts* was in part at least based upon the ground contended for by Mrs. Wickel's attorneys. At page 477 of 19 Utah, at page 411 of 57 Pac., in discussing the grounds of estoppel, Judge Rolapp said: "In this case it appears that, prior to the time the plaintiff took this mortgage Eleanor B. Wickel had commenced divorce proceedings against her husband in the proper court in this state; and it is not claimed that she had any knowledge either of the plaintiff's purpose to loan her husband money, or of the fact that the latter executed the mortgage sought to be foreclosed; so that she was never able to advise plaintiff of her claim during any time that

such information would have been of benefit to her. We do not understand that mere silence, under such circumstances, would amount to an estoppel; because, while probably it would have been her duty to speak, and make known her claim, had she been advised that her husband was about to make the mortgage in question, yet prior to such proposed action she could not reasonably apprehend that her husband, after being made acquainted through the divorce proceedings with the fact that she claimed to be his wife, would execute a mortgage to the plaintiff, or any other person, and permit a woman having no interest in the property to assume to sign such document for the apparent purpose of releasing dower. If the plaintiff in this case was misled, it was through the wrongs of Elbridge Tufts, and not through any negligence or fault of the defendant Eleanor B. Wickel." From the foregoing it seems that the court assumed that the commencement and pendency of the action for a divorce by Mrs. Wickel "prior to the time plaintiff (Norton) took his mortgage" was in itself sufficient to apprise Mr. Norton of Mrs. Wickel's claim that she was the lawful wife of Mr. Tufts. The court thus, in effect at least, held that if Mrs. Wickel, by her former conduct, had held out to the world that Mr. Wickel, and not Mr. Tufts, was her husband, she immediately, upon learning her true status, had likewise openly by a proper action in court disavowed her relation with Mr. Wickel, and had announced that, notwithstanding her apparent former relation with Mr. Wickel, she nevertheless was the lawful wife of Mr. Tufts. The controlling elements upon which the court seemingly based the decision therefore were: (1) That Mrs. Wickel, upon learning of the invalidity of the church divorce, at once ceased to live and cohabit with Mr. Wickel, and by commencing an action for divorce against Mr. Tufts had effectually repudiated that which, by her former conduct, the public generally had a right to assume as true, namely, that she was not the wife of Mr. Tufts because she was the wife of John Wickel; and (2) that Mr. Norton at the time he obtained the mortgage, if he did not actually know of Mrs.

Wickel's claim that she was the wife of Mr. Tufts, at least had the means at hand to ascertain that fact, and that Mrs. Wickel in no way misled nor attempted to mislead him. As is clear from the opinion, therefore, the court found that Mrs. Wickel, neither in law nor in fact, had misled Mr. Norton, and hence was not estopped from asserting her claim as against him. The contention of appellants in these cases is to the effect that respondent by her acts and conduct misled them into dealing with Dr. Park as an unmarried man, and, if she is now permitted to enforce her claims against them, it can only be done by gainsaying the effect of her conduct to their detriment. This, the appellants claim, equity and good conscience forbid.

From the foregoing we think it is quite clear that the real ground of estoppel now urged was not decided to be an element in the case of *Norton v. Tufts,* and hence was not passed on in that case. While it is true that there was at least an attempt to set up an estoppel in the answer in *Hilton v. Roylance,* it is equally true that the trial court made no rulings or in any way alluded to this issue, either in the findings of fact or conclusions of law in that case. The findings of fact and conclusions of law in that case were limited to the one issue, namely the issue of marriage, and the trial court found that the respondent in these cases and Dr. Parks were not married, and that she was not Dr. Park's widow, and hence had no right of dower in his estate. If the question of estoppel was thus an issue in *Hilton v. Roylance,* the parties, as well as the trial court, had ignored and abandoned it; and, if this be so, it is not easy to see how this court could have reviewed an issue which was not considered or passed upon in some form by the trial court. It is true that the respondent, who was the appellant in that case, insisted in her brief and argument that she was not estopped, and it is equally true that Mrs. Roylance, the respondent in that case, urged in her brief and argument that Mrs. Hilton, the respondent here was estopped, but such estoppel was asserted upon the following grounds: "On the ground of public policy, public morality,

and public decency, appellant is estopped from obtaining any relief whatever in this case, or from claiming, asserting, or establishing that she is, or ever was, the wife of Dr. John R. Park." See page 48, respondent's brief in the case of *Hilton v. Roylance.* The claim of estoppel was, therefore, a mere general claim that respondent was estopped from claiming to be the wife of Dr. Park. This court in the opinion in *Hilton v. Roylance* treated the matter even more generally. All that is said upon this question is found on page 159 of 25 Utah, on page 671 of 69 Pac., where Mr. Justice Bartch, speaking for the court, said: "Nor, under the circumstances disclosed in evidence, is she now estopped from asserting her marriage with Dr. John R. Park, or from denying the legality of her subsequent marriage." Not a word is there said, nor intimation made that she is estopped, for special reasons as against a particular grantee of Dr. Park, her alleged husband, but the statement of the court is confined to two matters, namely, her marriage with Dr. Park and her subsequent marriage with Mr. Hilton. The court simply held that she was not estopped from claiming the former nor denying the legality of the latter. All this may be conceded as a general proposition, and yet, when we come to apply her conduct concretely to particular individuals who had dealings with Dr. John R. Park, her husband, during his lifetime, it may be that upon the principles of common justice and in good conscience she should be estopped as against such individuals who claim as the innocent purchasers and grantees of Dr. Park. This latter is the claim that is now presented, and as a basis for which the parties to the present actions made an agreed statement of facts upon which, as we have already stated, the trial court based its conclusion that respondent was not estopped. That the former members of this court recognized a distinction between the general claim of estoppel as passed on in *Hilton v. Roylance* and the claim of estoppel as now made is clearly shown from what is said in a case decided nearly three years after the decision in the Roylance case, namely, the case of *In re Park Estate,* 29 Utah, 257, 81 Pac. 83.

In the latter case Mr. Chief Justice Bartch, who was the writer of the opinion in the Roylance case, at page 264 of 29 Utah, at page 84 of 81 Pac., in referring to the plea of estoppel, says: "Whether she can now maintain such suits against innocent third parties who made such purchase ignorant of the status existing between her and the vender, or whether her conduct during the lifetime of the vender was such as to estop her from maintaining them, are questions which we do not decide; the same not being material to this decision. Such questions can only be determined upon proper pleadings and proof. There is nothing in this case showing an estoppel." The "suits" referred to by the Chief Justice are the very suits that are now being prosecuted by respondent on the one hand and defended by appellants upon the other. From the foregoing it seems clear to us that the issue of estoppel as now presented for decision was neither presented nor decided in either of the cases to which reference has been made.

Neither can it be said that the question was necessarily involved, and hence decided, although not discussed, by the court. This contention might be sound if the parties to the actions, as well as the court, had not specifically stated what the character of the estoppel was that was claimed on the one hand and defended on the other and finally decided by the court. When a specific ground for an estoppel is alleged and the court passes upon such ground only, it cannot with any show of reason be said that such ground includes all other grounds of estoppel, and, because the court considered and passed upon that ground, therefore every possible ground which may be urged in a subsequent case has been included in the formed decision, and has thus become *stare decisis*. We do not understand this to be the law.

The question, therefore, is: Do the conceded facts constitute an estoppel *in pais* in favor of appellants, who are all grantees or purchasers from the grantees of Dr. Park, the former husband of respondent? The material facts upon the issue of estoppel, as either agreed to or not disputed, in substance, are: That on the 5th day of December, 1872, at Salt

Lake City, Utah, the respondent and Dr. Park, by a certain ceremony which this court has held constituted a valid marriage contract, became husband and wife; that on the 19th day of March, 1873, the respondent and said Dr. Park obtained what was by them supposed to be a divorce from their church, which is in words and figures as follows: "Know all persons by these presents: That we the undersigned John R. Park and Annie, his wife, before her marriage to him Annie Armitage do hereby mutually covenant, promise and agree to dissolve all the relations which have hitherto existed between us as husband and wife, and to keep ourselves separate and apart from each other, from this time forth. In witness whereof, we have hereunto set our hands at Salt Lake City, U. T., this 19th day of March, A. D. 1873. Signed in the presence of D. McKenzie. James Mack. John R. Park. Annie Flora Park." That said Dr. Park died testate on the 30th day of September, 1900, at Salt Lake City, Utah. That said Dr. Park lived continuously in Salt Lake City from December, 1872, to the time of his death, and respondent continuously lived therein from 1872 to the time of trial. That respondent and said Dr. Park never applied for nor obtained a divorce from any court of this or any other state. That they never lived nor cohabited together as husband and wife, and respondent never demanded support from said Dr. Park during his lifetime, nor received any aid from him. That said Dr. Park, in 1872, and for many years thereafter, was president of the University of Deseret, subsequently and now the University of Utah. That for many years before and up to within a short time of his death he was state superintendent of public instruction. That during the whole period of time from 1872 up to the time of his death he lived as and represented himself to be an unmarried man, and that in making the several conveyances set forth in the pleadings in the foregoing actions he represented himself to be and did convey the lands in question as a single man. That each purchaser before he obtained his conveyance caused the title to the land to be examined by a competent lawyer who approved the title as free from all in-

37 Utah—24

cumbrances and claims. That said Dr. Park lived near the real estate in question when the conveyances were made, and that respondent never was in possession or occupancy thereof, either with said Dr. Park or otherwise. That after obtaining the so-called church divorce the respondent went by her maiden name of Annie Armitage, and by that name, in 1875, married one William Hilton, an unmarried man, in Salt Lake City. That said respondent and said Hilton from thence forward continuously lived and cohabited together in Salt Lake City as husband and wife, said respondent being thenceforth known as the wife of said Hilton, and went by the name of Mrs. Hilton. That said respondent and said Hilton, while sustaining the relations aforesaid, reared a family of ten children, who were born to them from the time of their said reputed marriage up to the time of the death of said Dr. Park. That during the years 1887-89 said respondent joined in conveyances of real estate by said Hilton as his wife, all of which conveyances were recorded in the public records of Salt Lake county. That said respondent, at least six months prior to the death of said Dr. Park, was informed and knew that by the decision of this court the so-called church divorces were declared absolutely void and of no force or effect, and that the marrige relation which was attempted to be dissolved by such a divorce still continued in full force and effect. That, notwithstanding such knowledge on her part, she continued to live and cohabit with said William Hilton as his wife, and said nothing about her marriage with Dr. Park, or as to being his wife until after his death, after which she and said Hilton entered into a legal marriage, after which they continued to live and cohabit together as husband and wife the same as they had theretofore done. While the time when the original conveyances of the lands in question were made by Dr. Park is stated to have been during the years 1888 and 1889, the time when the present holders obtained their conveyances from the prior grantees of Dr. Park does not appear, except in the Geoghegan case. This we do not deem as material, for the reason that it is made to appear that all of the present claimants, as well as their grant-

ors, for many years lived in Salt Lake City, and at least some of them personally knew Dr. Park. Further, the facts clearly disclose that all knew him by reputation as a public educator and as a single man, and that, when they obtained the property in question, each purchaser had the title examined as aforesaid, and the inference is certainly strong, if not conclusive, that the original purchasers from Dr. Park and of whom the present claimants are grantees relied upon Dr. Park's conduct, habits, and mode of life as well as upon his declarations and representations that he was an unmarried man, and as such conveyed the property in question. Out of all the claimants there is but one, namely Elizabeth Goeghegan, who it appears knew when she purchased the premises that respondent claimed a dower right therein, but the original grantee of Dr. Park obtained the property now owned by Mrs. Goeghegan under the circumstances above detailed. We shall have occasion to refer to this phase of the case again. Finally, it is conceded that each one of the original grantees from Dr. Park purchased the property conveyed to him in good faith for value, and that each one of the claimants purchased in the belief that he was acquiring an absolute and unincumbered title, and that none of them, except Elizabeth Goeghegan, had knowledge, either directly or indirectly, of respondent's claim or of her relation to Dr. Park at the time of acquiring the property. The total value of the real estate of which Dr. Park became seised after 1872, and which was alienated by him before his death, is stipulated to be about $70,000.

Appellants contend that the foregoing facts, including the inferences that may be deduced therefrom, together with the circumstances disclosed, constitute an equitable estoppel in their favor as against the dower claim of respondent. Upon the other hand, respondent, in effect, insists that whatever might be the rule as applied to other claims, as to the claims for dower, the facts are entirely insufficient to constitute equitable estoppel. Without here repeating what she claims in this regard, and without formulating a statement of the necessary elements constituting estoppel, it must suffice to

say that she relies on the usual elements which the courts under a large variety of circumstances have declared to be necessary in order to successfully invoke an equitable estoppel or estoppel *in pais*. The usual formula is perhaps as clearly stated as it can be by Mr. Pomeroy in section 805, vol. 2 (2d Ed.) of his excellent work on Equity Jurisprudence, to which we refer the reader. Mr. Pomeroy, with his usual caution and loyalty to fundamental principles, prefaces the formula adopted by him by the following suggestion: "One caution, however, is necessary, and very important. It would be unsafe and misleading to rely on these general requisites as applicable to every case without examining the instances in which they have been modified or limited." In section 808 *et seq.*, in discussing the formula aforesaid, the author more specifically refers to conduct which may give rise to an estoppel, and we think that the author clearly shows that it is not a rule of universal application that a party, in order to be estopped, must have known the real truth concerning the material facts, but that under peculiar circumstances, it may be quite sufficient to create an equitable estoppel if "the party, although ignorant or mistaken as to real facts, was in such a position that he *ought* to have known them, so that knowledge will be imputed to him. In such case ignorance or mistake will not prevent an estoppel." It follows as a matter of course that, in order to make the foregoing rule applicable, the party invoking the estoppel must show that at the time he acted upon what appeared to him to be the real facts he lacked both the knowledge and the reasonable means of ascertaining the real facts, and that he relied upon the facts and circumstances as they then appeared to him in view of the conduct of the party against whom the estoppel is invoked.

Respondent contends, also, that the claim of an equitable estoppel must fail if for no other reason than that there is no evidence, either direct or inferential, that she intended to deceive any one by her conduct and that the inference is strong, if not conclusive, that she was ignorant of her own rights, was ignorant of the legal effect of the church divorce,

and that she in good faith believed that her marriage with
Dr. Park was legally annulled, and that the one with Mr.
Hilton was legal, and that she in good faith acted accord-
ingly.   This claim of respondent in our judgment is too
broad.   It is not necessary that in all cases and under all
circumstances there must be shown an actual intention to
deceive in order to estop a person.   In 2 Herman on Estop-
pel, etc., section 773, in referring to the usual claim that, in
order to prevent one from asserting his title upon the ground
of an estoppel, an actual intention to deceive must be shown,
the author says: "The doctrine (equitable estoppel) has not
in equity been limited to cases where there was an actual
intention to deceive.   The cases are numerous where the
party who was estopped by his declarations or his conduct
to set up his title was ignorant of it at the time, and of
course, could have had no actual intention to deceive by con-
cealing his title; yet, if the circumstances were such that he
ought to have informed himself, it has been held to be con-
trary to equity and good conscience to set up his
title, though he was in fact ignorant of it when he
made the representations."   It is almost unneces-
sary to add that mere inaction or silence may, under peculiar
circumstances, amount to both misrepresentation and con-
cealment of the true status of things which are important
for others to know in order to protect their full interests.
But it is further contended that the right of dower is favored
by the law, and that the widow is not to be deprived of this
right except where she has been guilty of some actual or
intended fraud.   Referring to section 755 of the volume last
above quoted from, the author, in answer to the claim that,
to constitute an estoppel *in pais* the party to be estopped
must have been guilty of intentional fraud, says:

"All that is essential is that there should be such conduct on the part
of the person against whom the estoppel is alleged as would make it
a fraud for him to gainsay what he had expressly admitted by his
words or tacitly confessed by his silence, but there need not be in the
precedent acts actual fraud or evil design.   All that is meant in the
expression that an estoppel must possess an element of fraud is that the
case must be one in which the circumstances and conduct would render

it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. The door is shut against asserting a right then (when) that would result in doing an injury by the party asserting it to some other person, or when in good conscience and honest dealing he ought not to be permitted to gainsay his previous conduct."

The right to assert an estoppel by appellants against respondent, in view of the facts and circumstances of the cases at bar, rests upon purely equitable grounds. An estoppel *in pais* is entirely a creature of courts of equity, and the equities of the particular case must control the result of that case. The reasons why such estoppels were called into existence, and when and to what extent they should be enforced, are well stated by the author in section 739 of 2 Herman on Estoppel and Res Judicata, in the following language:

"This doctrine is properly and peculiarly a doctrine of equity, originally introduced there to prevent a party from taking a dishonest and unconscientious advantage of his strict legal rights, though, like many other equitable doctrines, constantly administered at law. The ancient practice differed from the modern, and in actions at law, the courts, being unable of giving effect to this equity, were often enjoined where the party insisted on his rights at law contrary to the equitable doctrine. The office of equitable estoppels at law is therefore like that of injunctions in equity, to preclude rights that cannot be asserted consistently with good faith and practice, to prevent wrongs for which there might be no adequate remedy. And they should consequently, when the circumstances will permit, be so construed and moulded as not to deviate from their object; and those cases where estoppels are said to be *odious* or not favored should be only where the technicality of the estoppel cannot be subservient to its equity."

We have thus shown the general principles that govern courts in applying the doctrine of estoppels *in pais*. Some courts have mooted, while others have asserted, the proposition that an equitable estoppel cannot be invoked in an action to recover dower, unless the claim for dower is made in a proceeding in equity, for the reason that the right of dower is purely legal and is enforceable in a law action. Whatever anciently may have been the practice, or whatever it may be in some of our sister jurisdictions, our Constitution admits of no doubt upon the subject,

since, by section 19 or article 8, there may be but one form of action in which both law and equity may be administered. Such, we think, is also the great weight of authority as appears from the following cases in which dower claims or similar rights were involved and litigated, and in all of which the courts recognized the right to interpose equitable estoppels as defenses. (*Prater v. Prater,* 87 Tenn. 78, 9 S. W. 361, 10 Am. St. Rep. 623; *Yorston v. Yorston,* 32 N. J. Eq. 495; *Sedlak v. Sedlak,* 14 Or. 540, 13 Pac. 452; *Richeson v. Simmons,* 47 Mo. 20; *De France v. Johnson* (C. C.) 26 Fed. 891; *Dunlap v. Thomas,* 69 Iowa, 358, 28 N. W. 637.) In a number of the foregoing cases the doctrine is also illustrated and applied that, while particular facts may not be sufficient to estop the widow as against the estate of the deceased husband, they may nevertheless be sufficient to estop her as against the innocent grantees of her husband or as against such as claim through such grantees. We remark that the foregoing cases, with possibly one or two exceptions, are not claimed by us as cases in point upon the facts and circumstances disclosed by the record before us, but what we claim for them is that they fully sustain the principles for which we contend. The case of *Richeson v. Simmons, supra,* is in our judgment upon principle a case directly in point. The equitable estoppel in that case was based upon a marriage relation which legally continued to exist as in the cases at bar after it was assumed by the parties to the original marriage contract to have been ended, and the estoppel was based entirely upon the conduct of the parties to the original marriage, although they were in fact ignorant of their real legal status. Notwithstanding this ignorance, however, the court enforced the doctrine of protecting the innocent by invoking, if necessary, an equitable estoppel against one who by his conduct had induced another to act although likewise innocent of any intentional deceit, fraud or wrongdoing. The language of Mr. Justice Wagner, who wrote the opinion in *Richeson v. Simmons, supra,* is so apropos to some of the facts and circumstances in the cases at bar that we take the liberty to quote from the opinion

somewhat at length.    At page 27 of the volume aforesaid
(47 Mo.), Mr. Justice Wagner, in referring to the estoppel,
said:

"From all the investigation that I have given to the case it is of first
impression, so far as the question presented is concerned.   Now, the re-
cord shows that since 1849, a period of 20 years, Mr. Hill and Mrs.
Barclay have not only lived separate and apart, but they have ceased
to intermeddle with the affairs of each other.   With mutual concurrence
they have both changed their situation in life.   Each has married and
brought up children, built up separate and distinct property, and trans-
acted their business without regard to any previous connection between
them.   It may be reasonably inferred that there is not any very amicable
feeling of relationship existing between them.   Under such circum-
stances does the law demand or require the absurdity of Mrs. Barclay,
when she wishes to dispose of her private property, going to Mr. Hill
and asking him to join in the conveyance, when at the same time he
professes to be the husband of another woman?   The length of time
that has elapsed, the manner in which each party has regarded and
treated the other ought to operate as an effectual estoppel, and preclude
either party from an attempt to intermeddle in the affairs of the other.
For upward of twenty years Mr. Hill, as far as his relationship toward
Mrs. Barclay extends, has treated her as a *feme sole;* and upon no prin-
ciple of justice has he any interest in, or can he interfere or exert any
control over, her property.   Mr. Hill is not here claiming any right,
but it is set up in defense that the deed is not valid unless he joins and
concurs.   But I am of this opinion: I think that as Mr. Hill has vol-
untarily renounces his marital rights, and, by a course of policy per-
sisted in for more than twenty years, has led Mrs. Barclay and the
whole world to believe that all control or interest on his part had ceased
and been surrendered, he can no longer be a party, nor need he be con-
sulted in any disposition she may see proper to make of her property.
Any other conclusion would be promotive of injustice and lead to the
greatest hardship."

But we need not go to the extent in applying the estoppel
in the cases at bar that the Supreme Court of Missouri went
in *Richeson v. Simmons.*    True, in that case the husband's
rights to the wife's property were involved, while here it is
the wife's rights.    In the Richeson case it was held, how-
ever, that by reason of the conduct of the husband and wife,
who separated and lived apart from each other, and, in the
belief that they were legally divorced, each in good faith
intermarried with another, and continued this relation until
the action was commenced in which the question was raised,

that this constituted an abandonment of all marital rights
as well as an estoppel against enforcing such rights as against
any one who claimed as grantee of either husband or wife,
or against the estate of either. We are not asked to, nor is it
necessary for us to go to this extent in these cases. To hold
that a wife by her conduct has either abandoned or forfeited
all of her marital rights as against her husband and as against
his estate is one thing, while to hold that by her conduct she
has led those who lived in the same community with her and
her alleged husband to believe that he was a single man—
that all may deal with him as such—that she is the wife of
another man, and that by reason of such conduct she is estop-
ped as against those who actually dealt with the man whom
she now says was her lawful husband in the belief that he
was a single man, is quite a different thing. To hold that
by respondent's conduct in marrying Mr. Hilton and in
continuously for many years living and cohabiting with him
as her husband, in joining with him as his wife in making
conveyances of his real estate, in bearng his name, and rear-
ing his and her family of ten children, she did not hold out
to the world that her relations with him were precisely what
they seemed to be, and that she had absolutely no claim what-
ever upon Dr. Park, would be to ignore the universal experi-
ence of mankind. The respondent went even farther than
to permit others to deal with Dr. Park from the standpoint
of mere appearances. The so-called church divorce, while
impotent to dissolve the existing marriage, nevertheless, in
effect, said to Dr. Park: "You may deal with your property
as an unmarried man. You may represent yourself as such,
and make conveyances of your property in your name as a
single man." In view of this, the doctrine that a husband
may not, by his representations, bind the wife with respect
to her dower right in his property, does not apply. She not
only in effect agreed with Dr. Park forever to abandon him,
but she acted upon such agreement herself by entering into
permanent conjugal relations with another, and thus, by
such conduct, openly proclaimed to the world that, not only
had she abandoned all personal claims upon Dr. Park, but

that all the world might deal with him upon that basis. If she had proclaimed this fact from the housetops, it would have been no more effective than was her conduct, continued, as it was, from day to day, from month to month, and from year to year until the years had covered almost an entire generation. Under such circumstances, it is idle to assert that the law favors dower, and that nothing short of a legal relinquishment or the strongest grounds for an estoppel will ordinarily deprive the wife of her dower right. We concede that the law favors the dower right, and is tenacious in protecting the wife's right in her husband's estate. We also concede that the doctrine seems established, in the United States at least, that the mere claim of *bona fide* or innocent purchasers for value is not ordinarily available as against a widow's claim of dower. (2 Scribner on Dower (2d Ed.), 168; *Gano v. Gilruth,* 4 G. Greene (Iowa), 453; *Felch v. Finch,* 52 Iowa, 563, 3 N. W. 570; *Cruize v. Billmire,* 69 Iowa, 397, 28 N. W. 657.)

The appellants' rights are not based upon the naked claims of innocent purchasers. While, in order to prevail, they, or their grantors, must have purchased the property from Dr. Park without notice of respondent's right, yet this without the elements of an estoppel would not be sufficient to protect them. When, however, such a purchaser obtains property under the facts and circumstances of these cases, he is protected upon broader grounds than the mere claim of innocent purchaser. In these cases, if appellants are not protected against the claims of respondent, it will result in permitting her to contradict and gainsay, to appellants' detriment, all that she by her solemn acts and daily conduct during a long period of years avowed as true, and will further permit her to now assert that she did not authorize Dr. Park to deal with all the world as a single man. This, in justice and good conscience, she ought not be permitted to do. It is still true, and as applicable as ever, that "in a moral sense that is called equity which is found 'ex aequo et bono' in natural justice, in honesty, and in right." Moreover, if we permit respondent to assert her claims against these ap-

pellants, we must ignore the fundamental principle that, "wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." (16 Cyc. 773.)

In saying what we have we are not unmindful of the fact that dower is merely an inchoate right which may or may not ripen into a vested interest, and that a wife is not required to stand guard over her husband, and apprise those who are about to deal with him of her rights. Neither is she bound, or even affected, by his representations that he is unmarried, unless she knowingly, or under peculiar circumstances amounting to knowledge, permits innocent persons to deal with him while in good faith believing that he is what he represents himself to be. The law will ordinarily even protect wives who are the unwilling dupes of designing men as against the claims of those who have dealt with such men when they are in fact husbands, regardless of whether persons dealing with such husbands knew the actual relation or not. But this is protecting the wife in her marital rights, and not permitting her to assert those rights against those whom, by her own acts and conduct, she has led to believe that she had no rights. Under such circumstances, a court of equity and good conscience may not arbitrarily disregard her own acts and conduct, or condone them, to the injury of others. The claim that she too was innocent and was ignorant with respect to both her real status and her rights cannot prevail as against those who, in view of all the circumstances may be characterized as more innocent. Indeed, as against that class, respondent cannot claim to be innocent. She must be assumed to have known what all others knew—that she could not legally be the wife of two men at the same time. When, therefore, she by her acts and conduct said, "I am the wife of Mr. Hilton," she, by the same acts, declared to all the world that she was not, and legally could not be, the wife of Dr. Park. Third persons therefore had a right to rely on her acts and conduct in dealing with Dr. Park. If during all

the years from 1875, when respondent married Mr. Hilton, up to about six months before the death of Dr. Park, when she says she first learned of the invalidity of church divorces, any one had asked her the direct question, "Are you the wife of Mr. Hilton, or are you the wife of Dr. Park, and in the property of which do you claim rights?" she, in view of the circumstances would, she must, have regarded the question as an insult, and without any hesitation would have announced that Mr. Hilton and no one else was her husband, and in corroboration of the announcement would have pointed to her children and her past acts and conduct. If, therefore, there was a purchaser from Dr. Park here who had taken the precaution to ask the foregoing question, and he had received the assumed answer, would any one contend, or could a court of equity be found anywhere that would hold, that as against such a purchaser respondent would not be estopped? We think not. Is there any real difference in so far as a purchaser from Dr. Park is concerned between the case of appellants and the assumed case? Again we say we can perceive none.

Counsel for respondent, however, most earnestly insist that all of the foregoing facts may be true, and yet there is nothing which will prevent respondent from enforcing her dower right. In this connection it is again asserted that the authorities are to the effect that while a widow may, by her declarations, acts, and conduct, under certain circumstances, estop herself from successfully claiming her right of dower, yet this is not the case with a wife before the death of the husband. It is therefore contended by counsel that a wife cannot be barred from claiming her dower, except by a formal relinquishment of it as provided by the statute. The case of *Martin v. Martin,* 22 Ala. 86, is cited in support of this contention, and much reliance is apparently placed upon what is said in that case. It must suffice to say with respect to that case that the proceeding there was a direct one by the widow to recover dower in her alleged husband's estate. What was said by the court, therefore, in that case with respect to an estoppel, was intended to apply to the peculiar

facts and circumstances present in that case, and not to a case where the widow is proceeding against the innocent grantees of her alleged husband. If it be conceded that as against the estate of Dr. Park respondent would not be estopped, yet as against the claims of third persons she may be, and ought to be. It may also be conceded, as is held in another case cited by counsel, namely, *Towles v. Fisher,* 77 N. C. 437, that the husband cannot represent the wife with respect to her dower right, and thus bind her by his representations, yet, under the facts and circumstances of the cases at bar, as we have already attempted to show, if respondent did not in express terms do so, she nevertheless, by unavoidable implication, authorized Dr. Park to represent himself as a single man, and to deal with his property as such. Moreover, by the same acts, and in the same manner, she announced to all the world that she not only had abandoned Dr. Park for all time, but had also abandoned all claims upon him as a wife, and she proceeded to and did act upon these declarations by entering into relations which spoke louder than mere words. What is said in the foregoing cases, therefore, can have no application to the facts and circumstances in the cases at bar. The same may be said with respect to the case of *Martien v. Norris,* 91 Mo. 465, 3 S. W. 849. The only other case upon which counsel specially rely is *Wright v. De Groff,* 14 Mich. 163. In that case the widow was held not estopped from insisting upon her dower right for two reasons: (1) Because the agreement set up against her, and upon which the estoppel was claimed, was held void under the statute of frauds and hence of no force either offensively or defensively; and (2) because the acts of the widow, the second ground of estoppel, were all performed while she was acting in a representative capacity, and the court held that they did not constitute an estoppel against her personal rights. Giving the foregoing, as well as all other similar cases, their full force and effect, what relevancy have they to the cases at bar? Clearly none whatever.

In view of all the circumstances, upon what reasonable

ground can respondent base her claim that her rights in equity and good conscience are superior to the rights of appellants? Without ignoring the fundamental principles upon which equitable estoppels are based, we confess that we are unable to see wherein respondent can now be permitted to entirely ignore her past acts and conduct as against appellants and compel them to surrender to her as Dr. Park's widow a portion of the property that they purchased from Dr. Park in good faith while she claimed to be the wife of Mr. Hilton. In order to recover in these actions, she must be permitted to say, to the detriment of appellants, that her past acts and conduct by which she led the whole community, including appellants, to believe that she was the wife of Mr. Hilton, was a mere sham and falsehood. This equity and good conscience forbids us to permit.

In what we have said we disclaim any intention to in any way reflect upon the motives or the intentions of respondent. She, to a certain extent was the dupe of circumstances, and, we have no doubt, acted in good faith. By reason of her relations with Mr. Hilton, we do not wish to be understood as imputing to her any impure motives, any moral wrong nor that she consciously (except in the manner we have stated) desired to deceive any one. If we permitted her to prevail in these actions, however, she would perpetrate a wrong upon innocent persons. Our system of jurisprudence would fall far short of accomplishing what is claimed for it if it were impotent to afford relief under circumstances like those in the cases at bar, and a court of conscience that would fail to protect the purchasers in their rights as against the claims of respondent would, in our judgment, entirely ignore the fundamental principles upon which that system of jurisprudence is founded.

In conclusion we remark that it is claimed that the judgment against Elizabeth Goeghegan should be affirmed if for no other reason than that she purchased the property claimed by her after being made cognizant of respondent's claim of dower. It is, however, conceded that Mrs. Goeghegan pur-

chased from a grantee of Dr. Park, and that this grantee obtained the property under the facts and circumstances herein stated. The grantor of Mrs. Goeghegan could thus have invoked the estoppel against respondent, and, if this be so, Mrs. Goeghegan may do so as a subsequent purchaser. Ewart on Estoppel, 220-221. If this be not so, an estoppel would be of but little benefit to a purchaser of property, since he could not transfer it to another with the same rights that it is held by the purchaser. If, therefore, the original purchaser may successfully ward off an attack on his property upon the ground of an equitable estoppel against a claimant, why may not the grantee of such owner defeat the claim upon the original estoppel the same as the original owner could have done? We confess that we can see no reasons why such a grantee does not stand in the shoes of his grantor, and counsel for respondent have advanced none. What we have said with regard to the judgment against Mrs. Goeghegan applies also to the judgments against Sloan and Nellie M. Blair.

The judgment in each case is therefore reversed, with directions to the district court to set aside its conclusions of law that respondent is not estopped from claiming a dower interest in the several parcels of land described in her complaint in each case, and to substitute a conclusion of law that, by reason of the conceded and undisputed facts as they are made to appear from the stipulation of the parties and otherwise, respondent is so estopped; and to enter judgment or decree in each case quieting the title to the real estate described in the several complaints to the several appellants in accordance with the prayers contained in their answers. It is further ordered that the several parties to the foregoing actions pay his own costs on appeal.

McCARTY, J., and LEWIS, District Judge, concur.